UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROSITA H. SMITH, individually and on behalf of all similarly situated Washington State Residents, | CASE NO. 11-5054 RJB |
| Plaintiffs, | ORDER ON MOTIONS TO DISMISS |
| v. | |
| LEGAL HELPERS DEBT RESOLUTION, LLC, a Nevada limited liability company, JEM GROUP, INC., a Nevada corporation, MARSHALL BANKS, LLC, a California corporation, JOHN and JANE DOES 1-10, | |
| Defendants. | |

This matter comes before the Court on Defendants Legal Helpers Debt Resolution,

LLC's ("Legal Helpers") Renewed Motion to Dismiss Class Action Complaint (Dkt. 56) and

JEM Group, Inc.'s ("JEM") Renewed Motion to Dismiss Class Action Complaint (Dkt. 58).  The

Court has considered the pleadings filed regarding the motions, the remaining record, and is fully

1   advised.  Oral argument was requested, but would not be useful to the Court in deciding the

2   motions.

3          In late January 2011, Plaintiff filed this putative class action against Defendants, who

4   Plaintiff alleges are "for-profit 'debt-relief' companies" that solicit consumers for debt settlement

5   programs.  Dkt. 1.  Plaintiff asserts that Defendants charged her, and other similarly situated

6   Washington consumers, fees that exceed 15% of the consumer's total debt - the limit set by the

7   Washington Debt Adjusting Act, RCW 18.28, *et seq*., ("DAA").  *Id.*  Plaintiff makes claims for

8   violations of the DAA and Washington's Consumer Protection Act, RCW 19.86 , *et. seq*.,

9   ("CPA"), for breach of fiduciary duty, unjust enrichment, aiding and abetting violations of the

10  DAA and CPA, and civil conspiracy.  *Id.*  Plaintiff seeks injunctive and declaratory relief,

11  damages, attorneys' fees, and costs.  *Id.*  In the pending motions, Defendants Legal Helpers and

12  JEM move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12 (b)(6) for failure to state a

13  plausible claim for relief.  Dkts. 56 and 58.  Plaintiff opposes the motions.  Dkts. 74-75.  For the

14  reasons set forth below, the motions to dismiss should be denied.

## I.      FACTS AND PROCEDURAL HISTORY

### A.  FACTS

17         Defendant Marshal Banks, according to the Complaint, is a "front end" debt relief

18  company, who markets debt relief programs to consumers in Washington and provides "lead

19  generation" for other for-profit debt relief companies.  Dkt. 1, at 4.  It alleges that Marshal Banks

20  "had no capacity to perform debt relief services" at the time they marketed these debt reduction

21  programs to Plaintiff and the putative class.  *Id.*  The Complaint alleges that on March 1, 2010,

22  Marshal Banks, representing itself as "Kazlow and Tucker Debt Relief, LLC," sent Ms. Smith a

23  document entitled "Debt Settlement Agreement" and associated paperwork.  Dkt. 1, at 7.  The

24

1   Debt Settlement Agreement provided that Marshal Banks would attempt to reduce the principal

2   balance of Ms. Smith's unsecured debts and settle those debts. *Id*. at 7. The Debt Settlement

3   Agreement required Ms. Smith to designate a third-party custodian to receive payments and then

4   those funds would be used to pay off her debts and used for various fees associated with

5   participation in the program. *Id.* The Complaint alleges that the Debt Settlement Agreement

6   required the payment of several fees, including a service fee, equal to 17% of the total debt, in

7   addition to other charges. *Id.,* at 7-8. The Debt Settlement Agreement is alleged to have a

8   provision allowing Marshal Banks to assign the services to be provided under the contract. *Id.,*

9   at 10. On March 31, 2010, Ms. Smith signed the Debt Settlement Agreement and returned it to

10   Marshal Banks. *Id.,* 7. (In later pleadings, Marshal Banks acknowledges that "the March 31,

11   2010, documents sent to Plaintiff were sent in error and, based on Marshal Banks information

12   and belief, not implemented." Dkts. 87, at 2-3; and 88 at 2. Marshal Banks states that, "[i]t

13   believes the documents were sent to Plaintiff in error over employee confusion arising from

14   Marshal Banks' business with [Legal Helpers] verses its business with NationWide," (another

15   firm for which Marshal Banks acts as a marketer). Dkts. 87, at 3; and 88, at 2-3.)

16       In any event, the Complaint alleges that a few days later, in April of 2010, Marshal Banks

17   sent Ms. Smith another multiple page "standardized enrollment packet." *Id.*, at 11. Marshal

18   Banks purportedly instructed Ms. Smith to execute all the documents and return them. *Id.*

19   Included in the packet was an "Attorney Retainer Agreement" ("ARA"). *Id.*

20       The ARA is purported to be an "agreement for legal services entered into" solely between

21   Ms. Smith and Defendant Legal Helpers ("also known as the law firm of Macey, Aleman, Hyslip

22   & Searns") and not a contract with any individual, partner, member, or employee of Legal

23   Helpers. *Id.,* at 11 and 14. The Complaint alleges that Legal Helpers is "in the business of

24

ORDER ON MOTIONS TO DISMISS- 3

1    lending its name to multiple front-end and back-end for profit debt relief companies to create a

2    fiction that the subject debt relief services are being performed by attorneys." *Id.,* at 4.  The

3    Complaint alleges that Legal Helpers "has no capacity to perform those debt relief services" and

4    is "principally in the business of associating itself with debt relief programs marketed by

5    numerous for-profit debt relief companies and/or debt relief lead generators, including the debt

6    relief programs of Marshal Banks and JEM." *Id*., at 10.  According to the Complaint, the legal

7    services recited in the ARA were "recited for purposes of creating an illusion that the debt relief

8    services constitute the practice of law or are being performed solely incidental to the practice of

9    law." *Id*., at 13.  Plaintiff alleges that the ARA's "[r]ecited legal services are either not

10   performed, not performed by an attorney authorized to practice law in Washington, or performed

11   solely incidental to the debt relief program contracted for by consumers." *Id.*

12          JEM, according to the Complaint, is a "back end" debt adjustment company that

13   "implements, manages, and maintains debt relief programs."  Dkt. 1, at 4.  JEM is alleged to

14   "perform substantially all of the activities necessitated by consumers having contracted with

15   [Legal Helpers] through the execution" of the ARA.  *Id.*, at 15.  The Complaint alleges that the

16   ARA is really a contract for the "engagement of JEM in respect of managing, counseling,

17   settling, prorating, or liquidating of the indebtedness of a debtor and/or involving receiving funds

18   for the purpose of distributing said funds among creditors in partial payment of obligations of a

19   debtor." *Id.*  "[A]ttorneys at Legal Helpers do not control the method, manner, or means by

20   which JEM performs debt relief activities" or "otherwise directly supervise or control those

21   activities" according to the Complaint.  *Id.*, at 16.

22

23

24

1    The Complaint alleges that the ARA provided for an "initial fee of five hundred dollars

2    ($500.00), a monthly maintenance fee of forty-nine dollars ($49.00), and fees of fifteen percent

3    (15%) of the clients' total scheduled debt for services to be performed by JEM." *Id.,* at 14.

4    **B.  PROCEDURAL HISTORY**

5    On October 24, 2011, Defendants' motions for an order compelling arbitration was

6    denied.  Dkt. 95.  The arbitration clause was severed from the ARA because it was

7    unconscionable.  *Id.*

8    Parties sought and were granted extensions of time to complete discovery and file various

9    other motions.  Dkt. 90.  The deadline for Plaintiff to file her motion for certification of a class, if

10   any, is now set for February 24, 2012.  *Id.*  Trial is set to begin on October 15, 2012.  *Id.*

11   **C.  PENDING MOTIONS**

12   Defendant Legal Helpers now move for dismissal of the Complaint arguing that the DAA

13   and CPA claims should be dismissed because they are lawyers and the DAA exempts lawyers,

14   and if the DAA is applied as Plaintiff urges, it is unconstitutional, in part, "as an impairment of

15   contracts" and "as a violation of due process."  Dkts. 56 and 83.  Legal Helpers moves for

16   dismissal of Plaintiff's unjust enrichment, aiding and abetting, civil conspiracy, and breach of

17   fiduciary duty claims, arguing that Plaintiff has failed to state plausible claims for relief.  *Id.*

18   Legal Helpers also argues Plaintiff's class claims are not plausible.  *Id.*

19   Defendant JEM also moves for dismissal of the Complaint, arguing that the DAA claim

20   should be dismissed as against it because it provides "contracted for law-related services to

21   [Legal Helper's] clients" and so are exempt, and challenges the constitutionality of the DAA.

22   Dkts. 58 and 86.  It argues that Plaintiff's claims for unjust enrichment, aiding and abetting, and

23

24

1   civil conspiracy should also be dismissed under Fed. R. Civ. P. 12(b)(6).  *Id.*  JEM also moves to

2   dismiss Plaintiff's class claims.  *Id.*

3        Plaintiff opposes the motions to dismiss.  Dkts. 74 and 75.  She argues that she has pled facts

4   to state plausible claims that Defendants violated the DAA and CPA.  *Id.*  She argues the DAA's

5   exemptions do not apply to Defendants.  *Id.*  She argues she has asserted sufficient facts to

6   support her remaining claims.  *Id.*  Plaintiff argues that Defendants' arguments related to class

7   certification are premature and meritless.  *Id.*

8        This opinion will first address the motions to dismiss Plaintiff's DAA and CPA claims, then

9   Plaintiff's unjust enrichment, aiding and abetting and civil conspiracy claims.  Lastly, this

10  opinion will address the arguments raised in the motions related to the class claims.

11                              **II.   <u>DISCUSSION</u>**

12                    **A.  STANDARD ON MOTION TO DISMISS**

13       Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short

14  and plain statement of the claim showing that the pleader is entitled to relief."  Under Fed. R.

15  Civ. P. 12 (b)(6), a complaint may be dismissed for "failure to state a claim upon which relief

16  can be granted."  Dismissal of a complaint may be based on either the lack of a cognizable legal

17  theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v.*

18  *Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  While a complaint attacked by a

19  Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation

20  to provide the grounds of his entitlement to relief requires more than labels and conclusions, and

21  a formulaic recitation of the elements of a cause of action will not do.  *Bell Atlantic Corp. v.*

22  *Twombly*, 550 U.S. 544, 555 (2007) (*internal citations omitted*).

23

24

1    Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient

2  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

3  *v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(*citing Twombly*, at 570).  A claim has "facial plausibility"

4  when the party seeking relief "pleads factual content that allows the court to draw the reasonable

5  inference that the defendant is liable for the misconduct alleged." *Id*.  First, "a court considering

6  a motion to dismiss can choose to begin by identifying pleadings that, because they are no more

7  than conclusions, are not entitled to the assumption of truth." *Id.*, at 1950.  Secondly, "[w]hen

8  there are well-pleaded factual allegations, a court should assume their veracity and then

9  determine whether they plausibly give rise to an entitlement to relief." *Id.*  "In sum, for a

10  complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable

11  inferences from that content, must be plausibly suggestive of a claim entitling the pleader to

12  relief." *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009).

13    If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff

14  should be afforded the opportunity to amend the complaint before dismissal.  *Keniston v.*

15  *Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).  If the claim is not based on a proper legal theory,

16  the claim should be dismissed.  *Id.*  "Dismissal without leave to amend is improper unless it is

17  clear, upon de novo review, that the complaint could not be saved by any amendment." *Moss v.*

18  *U.S. Secret Service,* 572 F.3d 962, 972 (9th Cir. 2009).

19    Further, when ruling on a motion to dismiss, the court may "generally consider only

20  allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

21  subject to judicial notice." *Colony Cove Properties, LLC v. City Of Carson*, 640 F.3d 948, 955

22  (9th Cir. 2011)(*internal citations omitted*).  Accordingly, no pleadings outside the Complaint

23

24

1   (there were no attachments to the Complaint) and matters properly subject to judicial notice were

2   considered in deciding the pending motions to dismiss.

3        **B.  MOTIONS TO DISMISS PLAINTIFF'S DAA AND CPA CLAIMS**

4        Washington's DAA is "a remedial statute enacted to stem the numerous unfair and deceptive

5   practices rife in the growing debt adjustment industry."  *Carlsen v. Global Client Solutions, LLC*,

6   171 Wash.2d 486, 498 (2011)(*internal citations omitted*).  Accordingly, "the debt adjusting

7   statute should be construed liberally in favor of the consumers it aims to protect."  *Id.*

8        Under the DAA, a "debt adjuster" may charge a reasonable fee for services rendered.  RCW

9   18.28.080(1).  It provides, in pertinent part, that "[t]he total fee for debt adjusting services may

10  not exceed fifteen percent of the total debt listed by the debtor on the contract. The fee retained

11  by the debt adjuster from any one payment made by or on behalf of the debtor may not exceed

12  fifteen percent of the payment."  *Id.*  Plaintiff alleges in her Complaint that Defendants charged

13  her fees in excess of 15% of the total debt she listed on her contract.  Dkt. 1.

14       "RCW 18.28.185 provides an express civil remedy for violation of the debt adjusting

15  statute: 'a violation of this chapter constitutes an unfair or deceptive act or practice in the

16  conduct of trade or commerce under [the Consumer Protection Act (CPA),] chapter 19.86

17  RCW.'"  *Carlsen,* at 500 (*quoting* RCW 18.28.185).  In Washington,

18       To establish a violation of the CPA, a private plaintiff must prove five elements:
         (1) an unfair or deceptive act or practice occurred, (2) the act or practice occurred
19       in the conduct of trade or commerce, (3) the act or practice impacted the public
         interest, (4) the plaintiff suffered an injury to business or property, and (5) the
20       plaintiff can demonstrate a causal link between the unfair or deceptive act or
         practice and the injury.

21
         *Columbia Physical Therapy, Inc., P.S. v. Benton Franklin Orthopedic Assoc., P.L.L.C.*,
22
     168 Wash.2d 421, 442 (2010).  Accordingly, under RCW 18.28.185, violation of the DAA meets
23
     the first element for the CPA claim.
24

1    In their pending motions, Legal Helpers and JEM raise several challenges to Plaintiff's

2  argument that they violated the DAA, and argues that the Plaintiff's CPA claim, predicated upon

3  violations of the DAA, must also fail.  Dkts. 56 and 58.  Those challenges will be addressed

4  below.

5        1.   Whether the DAA Applies to Legal Helpers and/or JEM?

6    Defendant Legal Helpers contend that, as lawyers, they are exempted from the fee limitations

7  in the DAA and so Plaintiff's claim against them under the DAA should be dismissed.  Dkt. 56.

8  Defendant JEM argues that it is not subject to the DAA because "it provides contracted for law-

9  related services to [Legal Helper's] clients."  Dkt. 58.

10    In interpreting a statute, we look first to the statute's plain meaning.  *Carlsen v. Global Client*

11  *Solutions, LLC*, 171 Wash.2d 486, 494 (2011)(*citing Dep't of Ecology v. Campbell & Gwinn*,

12  LLC, 146 Wash.2d 1, 11–12 (2002)).  The DAA only applies to "debt adjusters."  *Id.*  Under the

13  DAA, a "[d]ebt adjuster, which includes any person known as a debt pooler, debt manager, debt

14  consolidator, debt prorater, or credit counselor, is any person engaging in or holding himself or

15  herself out as engaging in the business of debt adjusting for compensation."  RCW 18.28.010(2).

16        a.   *Legal Helpers*

17    The allegations in the Complaint against Legal Helpers are sufficient to conclude that Legal

18  Helpers are plausibly debt adjusters as defined in the DAA.  The Complaint asserts that Legal

19  Helpers is "in the business of lending its name to multiple front-end and back-end for profit debt

20  relief companies to create a fiction that the subject debt relief services are being performed by

21  attorneys."  Dkt. 1, at 4.  This allegation is sufficient to find that Legal Helpers held themselves

22  out "as engaging in the business of debt adjusting for compensation."  RCW 18.28.010(2).

23

24

1    Legal Helpers alleges that the DAA does not apply to them because they are lawyers.  A

2    "debt adjuster," as defined under the DAA, does not include, among others, "[a]ttorneys-at-law,

3    escrow agents, accountants, broker dealers in securities, or investment advisors in securities,

4    while performing services solely incidental to the practice of their professions."  RCW

5    18.28.010(2)(a).

6    The Complaint alleges sufficient facts to conclude the DAA exemption does not apply to

7    Legal Helpers.  The Complaint alleges that although the ARA's recites "legal services,"

8    attorneys at Legal Helpers either did not perform legal services, the recited legal services were

9    "not performed by an attorney authorized to practice law in Washington," or were "performed

10   solely incidental to the debt relief program contracted for by consumers."  Dkt. 1, at 13.  If, as

11   the Complaint alleges, Legal Helpers did not perform any legal services, then the services

12   performed could hardly be "incidental to the practice" of law.  If as the Complaint alleges, the

13   legal services were not performed by a Washington attorney, then the DAA's attorney exemption

14   does not apply.  *Bronzich v. Persels & Associates*, *LLC*, 2011 WL 2119372, at 6 (E.D. Wash.

15   May 27, 2011).   In *Bronzich*, the court, in part, considered whether the DAA's attorney

16   exception applied to non-Washington lawyers.  *Id.*  It reasoned that:

17           Under Washington Rule of Professional Conduct (RPC) 5.5(b), an attorney who
             systematically and continuously practices law in Washington and holds himself
18           out as being admitted to practice law in Washington, must be admitted by the
             Washington State Bar Association (WSBA).  The Court determines this
19           admission requirement helps define which attorneys may benefit from the DAA's
             exemption. It would defy the Washington legislature's intended purpose for the
20           DAA, which was to stop debt-adjusting industry abuses, if non-Washington
             admitted attorneys benefit from the DAA's services-solely-incidental-to-legal-
21           practice exemption. . . Accordingly, the Court determines attorneys who
             systematically and continuously practice law in Washington without the WSBA's
22           permission to do so may not benefit from the DAA's services-solely-incidental-to-
             legal-practice exemption.

23

24

1    *Id.* The Court finds this reasoning persuasive. The *Bronzich* court then considered whether

2    Washington lawyers, who specialized in "debt adjustment," as the Complaint alleges Legal

3    Helpers does here, could rely on the "while performing services solely incidental to the practice

4    of their professions" exception. *Id.* The *Bronzich* court concluded that the exception does not

5    apply to lawyers who specialize in debt adjustment. *Id.,* at 7. It noted that the phrase "solely

6    incidental to" had not been defined by the DAA or by a court considering the DAA. *Id.,* at 6. It

7    noted that a Tenth Circuit Court had interpreted that same phrase in a different statute (one

8    regulating investment advisers), as having two components: "[t]o be considered incidental, two

9    actions or objects must be related in a particular way—the incidental action or object must occur

10   only as a result of or in connection with the primary. Additionally, the incidental action or object

11   must be secondary in size or importance to the primary." *Id.* (*quoting Thomas v. Metro. Life Ins.*

12   *Co.*, 631 F.3d 1153 (10th Cir.2011)). The *Bronzich* court concluded,

13       Applying this reasoning to the DAA's services-solely-incidental-to-legal-practice
         exemption, the Court determines that Washington-admitted attorneys are
14       exempted if they adjust a debt in connection with other legal services. Therefore,
         an attorney specializing in debt adjusting is subject to the DAA because the
15       attorney's debt adjusting is not "solely incidental to" any legal practice but rather
         is the attorney's legal practice.
16

17   *Id.* This reasoning is also persuasive. The Complaint here has alleged sufficient allegations to

18   conclude that debt adjusting is the Legal Helper's legal practice, and so the exclusion does not

19   apply. Contrary to Plaintiff's allegations, Legal Helpers argues that it is "a full service national

20   consumer law firm with attorneys in forty-nine states, where a part of its practice involves

21   competent representation in debt resolution services." Dkt. 56. This assertion is not enough to

22   prevail in a motion to dismiss, and even if evidence were offered to support this contention, such

23   evidence would not be properly considered in deciding a motion to dismiss. Dkt. 56.

24       *b.  JEM*

1    The allegations in the Complaint are sufficient to conclude that JEM is plausibly a "debt

2    adjuster."  The DAA defines "[d]ebt adjusting " as "the managing, counseling, settling,

3    adjusting, prorating, or liquidating of the indebtedness of a debtor, or receiving funds for the

4    purpose of distributing said funds among creditors in payment or partial payment of obligations

5    of a debtor."  RCW 18.28.010(1).  The Complaint alleges that JEM performs "substantially all of

6    the activities necessitated by consumers having contracted with [Legal Helpers] through the

7    execution" of the ARA.  Dkt. 1., at 15.  The Complaint alleges that the ARA is really a contract

8    for the "engagement of JEM in respect of managing, counseling, settling, prorating, or

9    liquidating of the indebtedness of a debtor and/or involving receiving funds for the purpose of

10   distributing said funds among creditors in partial payment of obligations of a debtor."  *Id.*

11   JEM argues that the "law-related services are those of [Legal Helper's] and not JEM."  Dkt.

12   58.  It argues that the "law-related services" it provided were under the direct control and

13   supervision of Legal Helpers.  *Id.*  These allegations are unsupported and are contrary to the

14   factual allegations in the Complaint.  Dkt. 1, at 16 ("[A]ttorneys at Legal Helpers do not control

15   the method, manner, or means by which JEM performs debt relief activities" or "otherwise

16   directly supervise or control those activities.")  Further, even if Legal Helper's position is

17   credited - that it is an agent of Legal Helpers, the Washington Supreme Court has held that

18   agents of exempted entities are not exempted from the DAA solely because they are agents of

19   exempted entities.  *Carlsen v. Global Client Solutions, LLC,* 171 Wash.2d 486, 498 (2011)

20   (holding that agent of bank that was exempt under the DAA was not entitled to benefit from the

21   exemption).  The allegations in the Complaint are sufficient to conclude that JEM is a debt

22   adjuster under the DAA.

23       2.   Arguments on Whether the DAA is Constitutional?

24

ORDER ON MOTIONS TO DISMISS- 12

1    Legal Helpers argues that if the DAA's lawyer exception "solely incidental to the

2    practice of their professions" is interpreted like the *Bronzich* Court urges – that is with two

3    components, that the actions must be related and the incidental action or object must be

4    secondary in size or importance to the primary, the DAA is unconstitutional.  Dkt. 56.  Legal

5    Helpers and JEM argue that if interpreted in this manner, the DAA is unconstitutional "as an

6    impairment of contracts" and as a "violation of due process."  Dkts. 56, at 9 and 58, at 16-20.

7    Legal Helpers also references "equal protections" and the "Privileges and Immunities Clause of

8    Article IV." Dkt. 56, at 10-13.

9               a.  "*Impairment of Contract*"

10    "The contracts clauses of both the federal and state constitutions prohibit the legislative

11    authority from enacting legislation that impairs existing contractual obligations." *Optimer*

12    *Intern., Inc. v. RP Bellevue, LLC*, 151 Wash.App. 954, 959 (2009).

13    Defendants' arguments regarding whether the DAA violates the contracts clauses of the

14    federal and state constitutions is without merit.  There is no showing that any of the contracts

15    Defendants complain have been impaired were <u>existing</u> at the time the DAA was passed.  *Id.*

16               b.  "*Due Process," "Equal Protection," and "Privileges and Immunities*"

17    Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or

18    property, without due process of law."  The Equal Protection Clause prohibits states from

19    denying "any person within in its jurisdiction the equal protection of the laws."  Likewise,

20    Article IV, § 2 provides in part, "[T]he Citizens of each State shall be entitled to all Privileges

21    and Immunities of Citizens in the several States."  The Privileges and Immunities Clause bars

22    states from discriminating "against citizens of other states where there is no substantial reason

23

24

1  for the discrimination beyond the mere fact that they are citizens of other states." *Saenz v. Roe*,

2  526 U.S. 489, 502 (1999).

3        Defendants' argument, that the DAA violates these various constitutional provisions, is

4  unavailing.  Defendants make no showing that any <u>state</u> action has occurred.  With a few

5  exceptions not applicable here, the constitution protects individuals against actions of the state.

6  The state is not a party, and no showing has been made that the state has acted, or threatened to

7  act, against Defendants in any manner.  They may be concerned about the state filing charges

8  under various criminal statutes or the Washington Bar Association taking some sort of action.

9  However, Legal Helpers and JEM cite no authority for the proposition that they could raise, as a

10  defense against a private party's claims pursuant to state statutes and common law, that one

11  possible interpretation of one of the statutes is unconstitutional, where no state action has

12  occurred.

13        3.  <u>Conclusion</u>

14        Defendants' motion to dismiss Plaintiff's DAA and CPA claims should be denied.

15  Allegations in the Complaint are sufficient to conclude that it is plausible that Legal Helpers and

16  JEM are "debt adjusters" under the DAA, that no exception applies, and that they violated the fee

17  provisions of the DAA.  Defendants' constitutional arguments are without merit.

18  **C.  MOTIONS TO DISMISS UNJUST ENRICHEMENT, AIDING AND
         ABETTING AND CIVIL CONSPIRACY CLAIMS**

19

20        Defendants Legal Helpers and JEM's motions to dismiss Plaintiff's claims for unjust

     enrichment, aiding and abetting, and civil conspiracy should be denied.

21

22        Defendants argue that Plaintiff's claims for unjust enrichment, aiding and abetting, and

23  civil conspiracy are all also predicated on Plaintiff's claim that they violated the DAA, and so

     should be dismissed.  Dkts. 56, and 58.  They raise the same arguments in the context of these

24

ORDER ON MOTIONS TO DISMISS- 14

1   claims – that they are exempt from the DAA and even if they weren't the DAA is

2   unconstitutional.  *Id.*  As stated above, the allegations in the Complaint are sufficient to conclude

3   that both Legal Helpers and JEM are plausibly debt adjusters, that no exception applies, and that

4   they violated the DAA's fee limitations.  Accordingly, to the extent they seek dismissal of these

5   claims under those theories, the motions should be denied.  To the extent they move for dismissal

6   of these claims on other grounds, those arguments will be addressed below.

7            1.   Motions to Dismiss Claims for Unjust Enrichment

8            "Unjust enrichment is the method of recovery for the value of the benefit retained absent

9   any contractual relationship because notions of fairness and justice require it."  *Young v. Young*,

10  164 Wash.2d 477, 484 (2008).

11           Three elements must be established in order to sustain a claim based on unjust
             enrichment: a benefit conferred upon the defendant by the plaintiff; an
12           appreciation or knowledge by the defendant of the benefit; and the acceptance or
             retention by the defendant of the benefit under such circumstances as to make it
13           inequitable for the defendant to retain the benefit without the payment of its value.

14  *Id.* (*internal citations omitted*).  Under Washington law, "[a] party to a valid express contract is

15  bound by the provisions of that contract, and may not disregard the same and bring an action on

16  an implied contract relating to the same matter, in contravention of the express contract."  *U.S.*

17  *for Use and Benefit of Walton Technology, Inc. v. Weststar Engineering, Inc.*, 290 F.3d 1199,

18  1204 (9th Cir. 2002)(dismissing unjust enrichment claim where Plaintiff had affirmed the

19  validity of the contract).

20           Defendants argue that because the ARA is a valid contract, Plaintiff's claim for unjust

21  enrichment should be dismissed.  Dkts. 56 and 58.  Defendants' motion should be denied.

22  Unlike the party in *Weststar*, Plaintiff here alleges that the contract at issue, the ARA, is not a

23  valid contract. Accordingly, at this stage in the litigation, her claim should not be dismissed.

24

1           2.   Motions to Dismiss Claims for Aiding and Abetting

2          "RCW 18.28.190 makes it a gross misdemeanor to aid and abet violation of the debt

3   adjusting statute.  By criminalizing aiding and abetting, the debt adjusting statute establishes that

4   aiding and abetting its violation is wrongful conduct."  *Carlsen,* at 500.  "Because the debt

5   adjusting statute explicitly makes it a wrongful, criminal act to aid and abet violations of the

6   statute's primary requirements for debt adjusters, such as fee limits and disclosure rules, 'a

7   violation of this chapter,' as used in RCW 18.28.185, includes such aiding and abetting

8   violations."  *Id.*  Accordingly, the *Carlsen* court held that an exempted entity, like the bank there,

9   "still commits a crime and an unfair or deceptive act or practice in the conduct of trade or

10  commerce if it aids and abets a debt adjuster in violating [the DAA's] requirements."  *Id.,* at 500,

11  n. 5.

12         Defendants' motion to dismiss the aiding and abetting claims should be denied for the

13  reasons stated above regarding Plaintiff's DAA claims.  Further, based on the Washington

14  Supreme Court's holding in *Carlsen*, even if Legal Helpers were an exempt entity, Plaintiff has

15  still alleged sufficient allegations to conclude Defendants "aided and abetted a debt adjuster in

16  violating [the DAA's] requirements."  *Id.,* at 500, n. 5.

17          3.   Civil Conspiracy

18         Under Washington law, "[a] conspiracy is a combination of two or more persons who

19  contrive to commit a criminal or unlawful act, or to commit a lawful act for criminal or unlawful

20  purposes."  *Adams v. King County*, 164 Wash.2d 640, 660 (2008)(*internal citation omitted*).  For

21  there to be a conspiracy, Plaintiff must allege that the Defendants "entered into an agreement of

22  some kind with the other conspirators to accomplish the object of the conspiracy."  *John Davis &*

23  *Co. v. Cedar Glen # Four, Inc.*, 75 Wash.2d 214, 223, (1969).

24

1    Defendants' motions to dismiss Plaintiff's civil conspiracy claims should be denied.

2    Plaintiff has alleged sufficient facts, if true, to state a plausible claim for civil conspiracy.

3    Plaintiff alleges in the Complaint that the Defendants had an agreed business scheme, whereby

4    Marshal Banks would operate as the front end marketer and then assign the services to be

5    performed under the contract to a third party of its choosing.  Dkt. 1, at 10.  The Complaint

6    alleges that the Defendants then agreed that Legal Helpers, would lend its name to the front-end

7    and back-end for profit debt relief companies  - Marshal Banks and JEM - in order "to create a

8    fiction that the subject debt relief services are being performed by attorneys."  Dkt. 1, at 4.  The

9    Complaint alleges that Legal Helpers "has no capacity to perform those debt relief services" and

10    is "principally in the business of associating itself with debt relief programs marketed by

11    numerous for-profit debt relief companies and/or debt relief lead generators, including the debt

12    relief programs of Marshal Banks and JEM."  *Id*., at 10.  Plaintiff alleges in the Complaint that

13    Legal Helpers then agreed with JEM, by contract, that JEM would perform the debt relief

14    services.  *Id.*  These allegations are sufficient to conclude that the Defendants entered into an

15    agreement to evade the fee limitations set out in the DAA by hoping to take advantage of the

16    attorney exception.

17    **D.  MOTION TO DISMISS BREACH OF FIDUCIARY DUTY CLAIM**
    **ASSERTED SOLELY AGAINST LEGAL HELPERS**

18

19    Under Washington law, to make a claim for breach of a fiduciary duty, a plaintiff must

20    establish that: 1) the defendant had a fiduciary duty to the plaintiff, 2) the duty was breached, and

21    3) the breach caused plaintiff's damages.  *See Senn v. Nw. Underwriters, Inc.*, 74 Wn.App. 408,

22    414, 875 P.2d 637 (1994).  As stated in this Court's prior order denying the motions to compel

23    arbitration, "[i]n much of their daily work, lawyers act as a fiduciary for the client, in that they

24    have a duty to act in and for the client's best interests at all times and to act in complete honesty

ORDER ON MOTIONS TO DISMISS- 17

1    and good faith to honor the trust and confidence placed in them." *Kelly v. Foster*, 62 Wash.App.

2    150 (1991). Generally, "[t]hese duties require full communication and candor, as well as

3    performance meeting professional standards." *Id.*

4       Defendant Legal Helpers' motion to dismiss Plaintiff's claim against it for breach of fiduciary

5    duties should be denied. Plaintiff has alleged sufficient facts which make plausible its' claim for

6    breach of fiduciary duty against Legal Helpers. For example, Plaintiff alleges that Legal Helpers

7    partnered with non-lawyer debt adjustment companies for the purpose of evading the fee limits

8    in the DAA. Dkt. 1. Further, the Complaint alleges that Legal Helpers breached its fiduciary

9    duty to Plaintiff and the putative class by failing to inform them that Legal Helpers "had a

10    conflict of interest, including a conflict resulting from its business relationships and agreements

11    with for-profit debt relief companies, including Marshall Banks and JEM." Dkt. 1, at 15. The

12    Complaint alleges that Legal Helpers breached its fiduciary duty to Plaintiff by "placing its own

13    financial interests above the interests" of Plaintiff, and by "sharing fees with non-lawyers." *Id.,*

14    at 20-21. These allegations are sufficient to state a plausible claim for relief.

15       **E. MOTIONS TO DISMISS CLASS CLAIMS**

16       Defendants argue that Plaintiff's Complaint "contains nothing more than a bare recitation of

17    the language of the class action rule." Dkts. 56, at 18 and 58, at 13. Plaintiff responds and

18    argues that Defendants' motions regarding class certification should be denied. Dkt. 74 and 75.

19    Plaintiff argues that these motions are premature – that they are at odds with the Court's

20    Scheduling Order. *Id.* Plaintiff argues that the issues raised in the context of these motions to

21    dismiss are "a preemptive attack" on Plaintiff's upcoming motion for class certification. *Id.*

22       After these motions were filed, the parties entered into a stipulation for extension of

23    deadlines, including the deadline for Plaintiff to move for class certification. Dkt. 89. Parties

24

ORDER ON MOTIONS TO DISMISS- 18

1   stipulated that good cause existed to extend the deadlines, including the deadline for Plaintiff to

2   file the motion for class certification.  *Id.*

3       In the interests of fully and fairly considering the class certification on the merits and in

4   accord with the Court's Scheduling Order, Defendants' motions to dismiss the Complaint's class

5   claims should denied without prejudice.  Plaintiff properly points out that these issues should be

6   fully briefed.

7                                    **III.    ORDER**

8       It is hereby **ORDERED** that:

9       • Defendants Legal Helpers Dept Resolution, LLC's Renewed Motion to Dimsis

10          Class Action Complaint (Dkt. 56) and JEM Group, Inc.'s Renewed Motion to

11          Dismiss Class Action Complaint (Dkt. 58):

12              o **ARE DENIED WITHOUT PREJUDICE AS TO THE CLASS**

13                  **CLAIMS, AND**

14              o **DENIED AS TO ALL OTHER CLAIMS.**

15       The Clerk is directed to send uncertified copies of this Order to all counsel of record and

16   to any party appearing *pro se* at said party's last known address.

17       Dated this 31st day of October, 2011.

18

19

20              ROBERT J. BRYAN
                United States District Judge

21

22

23

24

ORDER ON MOTIONS TO DISMISS- 19