THE HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

ROSITA H. SMITH, individually and on behalf of all similarly situated Washington State Residents

Plaintiff,

v.

LEGAL HELPERS DEBT RESOLUTION, LLC, a Nevada limited liability company; LEGAL SERVICES SUPPORT GROUP, LLC, a Nevada corporation; JEM GROUP, INC., a Nevada corporation; MARSHALL BANKS, LLC, a California company; JOANNE GARNEAU, individually and on behalf of the marital community of JOANNE GARNEAU and ARTHUR GARNEAU; JASON SEARNS, individually and on behalf of the marital community of JASON SEARNS and JANE DOE SEARNS; THOMAS G. MACEY, individually and on behalf of the marital community of THOMAS G. MACEY and JANE DOE MACEY; and JEFFREY ALEMAN, individually and on behalf of the marital community of JEFFREY ALEMAN and JANE DOE ALEMAN; JEFFREY HYSLIP, individually and on behalf of the marital community of JEFFREY HYSLIP and JANE DOE HYSLIP; and JOHN AND JANE DOES 1-25,

Defendants.

CLASS ACTION

NO.  3:11−cv−05054−RJB

**AMENDED CLASS ACTION COMPLAINT**

**JURY DEMAND**

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# I. <u>INTRODUCTION</u>

1.     Many Washington residents are struggling to manage their unsecured credit card debts due to economic forces beyond their control.

2.     Such consumer indebtedness has given explosive rise to for-profit "debt relief" companies that market debt adjusting programs to indebted consumers through television, radio, the Internet, junk mail, and unsolicited phone calls, typically promising consumers resolution of their credit card debts for pennies on the dollar.

3.     The for-profit character of such businesses carries substantial risks that their debt adjusting programs will in fact exacerbate, rather than lessen, the consumers' financial troubles.

4.     In this regard, unfair and deceptive business practices endemic to "for-profit" debt adjusting companies have caused Washington State, sister states, and most recently the Federal Trade Commission, to adopt statutes or regulations protecting consumers from predatory fee practices of "for-profit" debt adjusting companies.

5.     Such consumer protections have given rise to various business schemes aimed at evading these consumer protection laws.

6.     This action concerns the debt adjusting industry's most recent stratagem to evade consumer protection laws, coined by the debt adjusting industry: "the attorney model."

7.     The attorney model is comprised of three primary components.  The first component involves front-end debt adjusting companies engaged in the business of marketing debt adjusting services to consumers.  The second component involves associated "back-end" debt adjusting companies engaged in the actual business of performing debt adjusting services marketed by such front-end "affiliates." The third component involves attorneys who are in the business of lending

their names to for-profit debt adjusting enterprises.  Contracts for debt adjusting services are functionally laundered through the attorney, who acts as the contracting party for debt adjusting services solicited by the front-end debt adjuster and performed by the back-end debt adjuster.  The parties thereby maintain a false appearance that the debt adjusting services are being offered and performed by a law firm.  The participating entities do this in a calculated effort to "exempt" themselves from state debt adjuster laws that prohibit predatory fee practices.

8.      This Class Action, brought on behalf of Washington consumers, concerns prominent players in this new nationwide scheme to evade debt adjuster laws and thereby unjustly profit from the misfortunes of already heavily indebted consumers.

9.      Defendants, stated simply, are engaged in a coordinated, conspiratorial, and criminal business enterprise designed to enrich themselves at the expense of indebted Washington consumers through violation of Washington's Debt Adjusting statute, chapter 18.28 RCW, and Washington's Consumer Protection Act, chapter 19.86 RCW.

10.     Named Plaintiff and proposed Class Representative Rosita H. Smith, therefore, brings this action on behalf of herself and on behalf of a Class of similarly situated Washington residents for purposes of enjoining Defendants' unlawful business practices and for purposes of securing recovery for injured Washington consumers.

## II. PARTIES

11.     **Plaintiff Rosita H. Smith:**  Plaintiff Rosita H. Smith is domiciled in the state of Washington and a resident of Grays Harbor County.  Rosita Smith is typical of many Washington consumers and families who are currently struggling financially and who responded to Defendants' solicitations regarding debt adjusting services.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

12.     **Defendant Legal Helpers Debt Resolution, LLC**:  Defendant Legal Helpers Debt Resolution, LLC ("LHDR") is a Nevada limited liability company.  It is one corporate face of an Illinois law firm managed by Defendants Jason Searns, Jeffrey Aleman, Thomas G. Macey, Jeffrey Hyslip, and potentially others.  Defendants LHDR, Jason Searns, Jeffrey Aleman, Thomas G. Macey, and Jeffrey Hyslip also operate under the trade name Macey Aleman Hyslip & Searns.  LHDR reports to the Illinois Secretary of State that its principal office is located in Denver, Colorado.  The actual principal office of the law firm, Macey Aleman Hyslip & Searns, is Chicago, Illinois.  At times material to facts alleged in this Amended Complaint, LHDR did business throughout the United States, including the state of Washington.  LHDR first registered to do business in the state of Washington on July 16, 2010.  LHDR represents to the public that it maintains offices at 600 Stewart Street, Suite 1224, Seattle, Washington, 98101.  LHDR, through the instrumentality of Legal Services Support Group, LLC, serves as the contracting party for debt adjusting services marketed by various front-end for-profit debt adjusting companies, including but not limited to Defendant Marshall Banks, LLC, which debt adjusting services are performed by various back-end for-profit debt adjusting companies, including but not limited to Defendant JEM Group, Inc.

13.     **Defendant Legal Services Support Group, LLC:**  Defendant Legal Services Support Group, LLC ("LSSG") is a for-profit Nevada corporation.  LSSG does business throughout the United States, including the state of Washington.  LSSG is not, and has never been, registered to do business in the state of Washington.  LSSG, acting in partnership with LHDR, is the instrumentality through which numerous front-end for-profit debt adjusting companies, such as Marshall Banks, LLC, and numerous "back-end" for-profit debt adjusting companies, such as JEM

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Group, Inc., associate themselves with LHDR for purposes of sustaining a false pretense that debt adjusting services are being performed by attorneys solely incidental to the practice of their profession.  LSSG has three managing partners, one of which is Defendant JEM Group, Inc.

14.     **Defendant JEM Group, Inc.:**  Defendant JEM Group, Inc. ("JEM") is a Nevada corporation having its principal offices in Irvine, California.  JEM is a for-profit company engaged in performing back-end debt adjusting services for consumers having significant credit card debt. JEM does business throughout the United States, including the state of Washington.  JEM is not, and has never been, registered to do business in the state of Washington.  JEM, further, is a managing partner of and member of Defendant LSSG.  JEM implements, manages, and maintains debt adjusting programs marketed by "front-end" affiliate debt adjusting companies, including but not limited to Marshall Banks, LLC.

15.     **Defendant Marshall Banks, LLC:**  Defendant Marshall Banks, LLC (hereinafter "Marshall Banks") is a California for-profit company having its principal offices in Irvine, California.  Marshall Banks does business under the name Kazlow & Tucker Debt Relief, LLC. "Kazlow & Tucker Debt Relief, LLC" is a fictitious entity that is not registered to do business in any state.  Marshall Banks does business throughout the United States, including the state of Washington.  Marshall Banks is not and has never been registered to do business in the state of Washington.  Marshall Banks is a "front-end" debt adjusting company that markets debt relief programs to consumers, including Washington residents.  Marshall Banks, in this regard, acts as a "lead generator" for debt adjusting companies such as LHDR, LSSG, and JEM.

16.     **Defendant Joanne Garneau:**  Defendant Joanne Garneau (Garneau) is an individual domiciled in the state of California and residing in Orange County, California.  Garneau is the CEO

of and owner, directly or indirectly, of JEM.  At all times material to the allegations in this Amended Complaint, Garneau directed the business affairs of JEM.  Additionally, Garneau acted as an agent of JEM in managing the business activities of LSSG.  Garneau, individually, and as an officer, director, managing partner, and/or agent of JEM and LSSG, established, directed, and/or ratified the unfair and deceptive business practices of JEM and LSSG alleged in this Amended Complaint.  Garneau's conduct was done for the benefit of and did benefit her marital community.

17.  **Defendant Jason Searns:**  Defendant Jason Searns ("Searns") is domiciled in and a resident of Colorado.  Searns is a managing partner and general counsel of LHDR.  Searns is licensed to practice law in Colorado.  Searns is not licensed to practice law in the state of Washington.  LHDR registered to do business in the state of Washington on July 16, 2010.  In its registration LHDR identifies Searns as the manager of LHDR.  Searns is one of four principal moving agents of LHDR.  Searns, acting in concert with Defendants Thomas Macey, Jeffrey Aleman and Jeffrey Hyslip, established, directed, and/or ratified the unfair and deceptive business practices of LHDR alleged in this Amended Complaint.  The conduct of Searns was done for the benefit of and did benefit his marital community.

18.  **Defendant Thomas G. Macey:**  Defendant Thomas G. Macey ("Macey") is domiciled in and resides in Illinois.  Macey is a senior partner in LHDR.  Macey is licensed to practice law in Illinois.  Macey is not licensed to practice law in the state of Washington.  Macey is one of four principal moving agents of LHDR.  Macey, acting in concert with Defendants Searns, Jeffrey Aleman and Jeffrey Hyslip, established, directed, and/or ratified the unfair and deceptive business practices of LHDR alleged in this Amended Complaint.  Macey's conduct was done for the benefit of and did benefit his marital community.

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

19.     **Defendant Jeffrey Aleman**:  Defendant Jeffrey Aleman ("Aleman") is domiciled in and resides in Illinois.  Aleman is a senior partner in LHDR.  Aleman is licensed to practice law in Illinois.  Aleman is not licensed to practice law in the state of Washington.  Aleman is one of four principal moving agents of LHDR.  Aleman, acting in concert with Defendants Macey, Searns and Jeffrey Hyslip, established, directed, and/or ratified the unfair and deceptive business practices of LHDR alleged in this Amended Complaint.  Aleman's conduct was done for the benefit of and did benefit his marital community.

20.     **Defendant Jeffrey Hyslip**:  Defendant Jeffrey Hyslip ("Hyslip") is domiciled in and resides in Illinois.  Hyslip is a senior partner in LHDR.  Hyslip is licensed to practice law in Illinois.  Hyslip is not licensed to practice law in the state of Washington.  Hyslip is one of four principal moving agents of LHDR.  Hyslip, acting in concert with Defendants Macey, Searns and Aleman, established, directed, and/or ratified the unfair and deceptive business practices of LHDR alleged in this Amended Complaint.  Hyslip's conduct was done for the benefit of and did benefit his marital community.

21.     **Unnamed Defendants John Does and Jane Does 1 through 5:**  John Does and Jane Does 1-5 are individuals who exercised close control, direction, and management of LHDR and/or who participated in and approved the conduct of LHDR described in this Amended Complaint.  The true names, identities, and capacities of Does 1 through 5 are presently unknown to Plaintiff, but are the subject of investigation and discovery anticipated in this action.

22.     **Unnamed Defendants John Does and Jane Does 6 through 10:**  John Does and Jane Does 6-10 are individuals who exercised close control, direction, and management of Marshall Banks and/or who participated in and approved the conduct of Marshall Banks described in this

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Amended Complaint.  The true names, identities, and capacities of Does 6 through 10 are presently unknown to Plaintiff, but are the subject of investigation and discovery anticipated in this action.

23.     **Unnamed Defendants John Does and Jane Does 11 through 15:** John Does and Jane Does 11-15 are individuals who exercised close control, direction, and management of JEM and/or who participated in and approved the conduct of JEM described in this Amended Complaint. The true names, identities, and capacities of Does 11 through 15 are presently unknown to Plaintiff, but are the subject of investigation and discovery anticipated in this action.

24.     **Unnamed Defendants John Does and Jane Does 16 through 20**:  Unnamed Defendants John Does and Jane Does 16-20 are additional persons, corporations, partnerships, companies, predecessors in interest, successors in interest, and/or other entities who have acted in concert with, in partnership with, or as agents of named Defendants.  The true names, identities, and capacities of Does 16 through 20 are presently unknown to Plaintiff, but are the subject of investigation and discovery anticipated in this action.

25.     **Unnamed Defendant John Does and Jane Does 21 through 25:**  Unnamed Defendants John Does and Jane Does 21-25 are individuals who exercised close control, direction, and management of LSSG and/or who participated in and approved the conduct of LSSG as described in this Amended Complaint.  The true names, identities, and capacities of Does 21 through 25 are presently unknown to Plaintiff, but are the subject of investigation and discovery anticipated in this action.

### III. <u>JURISDICTION AND VENUE</u>

26.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2).  Based on information and belief, the matter in controversy exceeds the sum or value of

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

$5,000,000, exclusive of interest and costs, and is a class action composed of more than 100 members and in which at least one member of the Class is a citizen of a state different from that of the Defendants.

27.    Defendants have engaged in conduct violating chapter 19.86 RCW, which conduct has an impact in Washington, giving rise to personal jurisdiction over each Defendant pursuant to RCW 19.86.160.

28.    Defendants have regularly engaged in business in Washington and directed at residents of Washington and have otherwise availed themselves of the Washington marketplace and secured the benefits of that marketplace.  Such conduct has included, among other things, holding themselves out as debt relief companies providing debt relief services to Washington residents; directing business solicitations into the state of Washington that are aimed at indebted Washington residents and that seek participation in Defendants' debt relief programs; contracting in Washington with Washington residents for various services, including debt relief services; offering to perform and/or performing activities for Washington residents, including debt relief functions; and/or contracting for legal services or performing legal services for Washington residents.

29.    Venue is proper pursuant to 28 USC § 1391(b)(2) in that the events that gave rise to claims occurred in substantial part in this federal district.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

## IV. FACTS

A.      **Legal Helpers Debt Resolution, LLC.**

30.     LHDR was formed as a Nevada corporation on April 29, 2009, by Illinois attorney Macey, Illinois attorney Aleman, Colorado attorney Searn, and Illinois attorney Hyslip.

31.     At all times material to allegations made in this Amended Complaint, Macey, Aleman, Searns and Hyslip managed and directed the business affairs of LHDR.

32.     In their capacities as managers of LHDR, Macey, Aleman, Searns and Hyslip instigated, participated in, and with knowledge, approved of the wrongful conduct of LHDR alleged in this Amended Complaint.

33.     LHDR holds itself out to Washington consumers as a "nationwide" law firm.

34.     In fact, LHDR is a for-profit business whose principle business is debt adjusting. LHDR profiteers by lending its name to the debt adjusting activities of multiple for-profit debt adjusting companies, including but not limited to Defendants, LSSG, JEM, and Marshall Banks.

35.     LHDR lends its name to the debt adjusting activities of such companies for the purpose of creating a false pretense that the debt adjusting activities are being performed by an attorney solely incidental to that attorney's practice of law.  Defendants engage in this pretense in a calculated effort to "exempt" themselves from state debt adjusting laws, including chapter 18.28 RCW, that, among other things, limit the fees that debt adjuster can charge consumers.

B.      **Legal Services Support Group, LLC.**

36.     LSSG markets, orchestrates, and effectuates Defendants' unlawful business scheme through associations with numerous front-end and back-end debt adjusting companies.

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

37.     Based on information and believe, Defendants LHDR, JEM, GarneaTheu, Searns, Macey, Aleman, Hyslip, and others established LSSG for the purpose of carrying out the wrongful business purposes alleged in Amended Complaint.

38.     LSSG, in that regard, was formed on October 1, 2010.

39.     LSSG is a limited liability company and is managed by three nationally prominent for-profit debt adjusting companies.  Defendant JEM is one of LSSG's three managing partners. Defendant Garneau, as an agent of JEM, exercises management authority over LSSG.

40.     To carry out the unlawful business purposes alleged in this Amended Complaint, LSSG entered into an Operating Agreement with LHDR.

41.     LSSG's Operating Agreement with LHDR recites that its purpose is to provide "out-sourced non-legal services to law firms, and [to] act on behalf of the Members to develop, administer, and oversee compliance of the Members with the applicable law, rules, and regulations concerning the provision of non-legal support services, particularly related to debt management and resolution business."

42.     In reality, LSSG is a clearing house that promotes and effectuates associations between LHDR and innumerable front-end and back-end for-profit debt adjusting companies for purposes of creating and sustaining a false appearance that the debt adjusting activities of those companies are actually services being performed by an attorney solely incidental to the practice of his profession.

43.     LSSG creates such associations between for-profit debt adjusting companies and LHDR through membership in LSSG.  Defendant JEM, in this regard, is a "Class A Member" of

LSSG.  Class A Members of LSSG are entitled to select the managing members of LSSG and to vote to admit or to remove members of any class and such other rights granted to all members.

44.     To market debt adjusting services to consumers that are performed by LSSG members but contracted for through LHDR, LSSG enters into marketing agreements with numerous front-end debt adjusting companies, including but not limited to Defendant Marshall Banks.

45.     Pursuant to such marketing agreements, front-end debt adjusting company members, including Defendant Marshall Banks, solicit the participation of consumers in debt adjusting services purportedly being offered by and to be performed by LHDR.  The subject debt adjusting services, in fact, are performed by back-end debt adjusting company members of LSSG, including but not limited to Defendant JEM.

46.     To bolster an appearance that the subject debt adjusting services are actually services of an attorney performed solely incidental to the practice of his profession,  the contracts with LHDR, as approved by LSSG, falsely recite that the debt adjusting services are performed under the direct supervision and control of an attorney at LHDR.

47.     Based on information and belief, attorneys at LHDR do not control the method, manner, or means by which back-end debt adjusting companies, including JEM, perform debt relief services for Washington residents or otherwise directly supervise or control those activities.

48.     Even if they did, Defendants remain subject to the chapter 18.28 RCW because LHDR is primarily engaged in the business of debt adjusting.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

**C.      JEM Group, Inc.**

49.      LHDR has no capacity to perform the debt adjusting services contracted for through the efforts of front-end debt adjusting company members of LSSG, such as Marshall Banks.

50.      JEM, in that regard, is a "back-end" for-profit debt adjusting company engaged in the business of managing, settling, adjusting, prorating, or liquidating the indebtedness of debtors. Defendant Garneau is the manager, owner, and chief moving force behind JEM.  In her capacity as CEO and owner of JEM, Garneau established, directed, approved, and ratified the unlawful business practices of JEM alleged in this Amended Complaint.

51.      Customers solicited by front-end debt adjusting companies, including Marshall Banks and other lead generators for LSSG, do not have their debt adjusting services performed by LHDR. Contracts for debt adjusting service, denominated by Defendants as "Attorney Retainer Agreements" or, more recently, "Agreement[s] for Services," are in fact contracts for the engagement of a back-end debt adjusting company member of LSSG, such as JEM, to perform debt adjusting services for the consumer.

52.      JEM, in this regard, performed substantially all of the debt adjusting activities necessitated by consumers having executed a standardized "Attorney Retainer Agreement" or "Agreement for Services" designating JEM as the back-end debt adjuster.

53.      For purposes of maintaining a fiction that JEM's debt adjusting activities are the activities of an attorney, JEM falsely pretends that its activities are done under the direct supervision and control of an attorney at LHDR.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

54.     Based on information and belief, attorneys at LHDR do not control the method, manner, or means by which back-end debt adjusting companies, including JEM, perform debt relief activities for consumers or otherwise directly supervise or control those activities.

55.     Based on information and belief, the debt relief activities of back-end debt adjusting companies, including those of JEM, performed  for  Washington residents, are not performed under the direct supervision or control of an attorney authorized to practice law in Washington.

**D.      Marshall Banks.**

56.     Kazlow & Tucker Debt Relief, LLC is a fictional entity not registered or licensed to conduct business in any state. It is and is a doing-business name of Defendant Marshall Banks.

57.     Marshall Banks is a for-profit front-end debt adjusting company that, in associate with other debt adjusting companies, solicits consumer participation in debt adjusting programs.

58.     Prior to April 2010, Marshall Banks solicited consumers participation in debt adjusting programs purportedly performed by Marshall Banks but actually performed by a company owned and managed by Defendant Garneau: viz., Nationwide Support Service.  Nationwide Support Services is a California company whose officers are Defendant Garneau and her husband, Arthur Garneau.  The contracts provided to consumers by Marshall Banks for services actually performed by Nationwide Support Services identified Marshall Banks as the company providing those services.

59.     As part of Defendants overall scheme business scheme, Marshall Banks, beginning on or about late March 2010, began supplying consumers who responded to its solicitations with Defendants' standardized "Attorney Retainer Agreement" or "Agreement for Services" (hereinafter "Agreement").  Defendants' standardized "Agreement" identified LHDR as the contracting party

AMENDED CLASS ACTION COMPLAINT - 14
CASE NO. 3:11−cv−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

and identified JEM (owned and managed by Defendant Garneau) or another back-end debt adjusting company as an agent of LHDR that would perform services on LHDR's behalf.

**E.      Class Representative Rosita Smith.**

60.      The experience of named Plaintiff and proposed Class Representative Rosita Smith is exemplary of Defendants' classwide conspiratorial scheme to secure unlawful upfront debt adjusting fees from heavily indebted Washington consumers, in violation of chapter 18.28 RCW.

61.      On March 1, 2010, Marshall Banks, representing itself as "Kazlow & Tucker Debt Relief, LLC," transmitted to Rosita Smith in Washington its standardized enrollment packet, soliciting her participation in a debt adjusting program purportedly performed by Kaslow & Tucker Debt Relief, LLC, but to be actually performed by Defendant Garneau's behind-the-scenes company, Nationwide Support Services.

62.      At the time Marshall Banks solicited Rosita Smith, Defendants were launching their "attorney model" scheme in a calculated effort to "exempt" their business activities from state debt adjuster statutes, including chapter 18.28 RCW.

63.      Consequently, in late March 2010, Marshall Bank sent to Rosita Smith a second enrollment package, this time containing Defendants' new "Attorney Retainer Agreement."  The "Attorney Retainer Agreement" identified LHDR as the contracting party and provided that debt adjusting services would be performed by Defendant Garneau's new company, JEM.

64.      Marshall Banks issuance of successive contracts to Rosita Smith during this time period was not a mistake.  The successive contracts are artifacts of and evidence of Defendants newly minted scheme to mask their ongoing debt adjusting activities as services of an attorney performed solely incidental to that attorney's practice of his profession.

65.     Rosita Smith executed and returned to Marshall Banks the substitute "Attorney Retainer Agreement."

66.     Based on information and belief, from roughly mid-March 2010 forward, members of LSSG and other front-end companies, including Marshall Banks, solicited Washington consumers for participation in debt adjusting services using a standardized "Attorney Retainer Agreement" or "Agreement for Services" materially identical to that executed by Rosita Smith.  Attached hereto as Appendix A is a copy of the subject Attorney Retainer Agreement.

67.     Based on information and belief, Washington residents who have engaged the debt adjusting services of Defendants through execution of the standardized "Agreement" number in the thousands.

68.     Defendants' standardized "Agreement" is a contract providing for the managing, counseling, settling, prorating, or liquidating of the indebtedness of a debtor and involving a designated third-party custodian's receipt of debtor's funds for the purpose of distributing said funds among creditors in partial payment of obligations of that debtor.

**F.     Defendants' Violations of Chapter 18.28 RCW.**

69.     Services offered to, contracted for, or performed for Washington residents pursuant to Defendants' standardized "Agreement" are subject to chapter 18.28 RCW.

70.     LHDR is a for-profit company engaged in or holding itself out as engaged in the business of managing, settling, adjusting, prorating, or liquidating of the indebtedness of debtors.

71.     LHDR is a debt adjuster within the meaning of RCW 18.28.010(2) and is engaged in debt adjusting within the meaning of RCW 18.28.010(1) with respect to services offered, contracted for, or performed pursuant to Defendants' "Agreement."

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

72.     Debt adjusting services offered, contracted for, or performed pursuant to Defendants' standardized "Agreement" are not performed solely incidental to the practice of an attorney's profession.

73.     Debt adjusting services offered, contracted for, or performed pursuant to Defendants' standardized "Agreement" are not performed solely incidental to the practice of a Washington attorney's profession.

74.     Purported legal services recited in Defendants' standardized "Agreement" are either not performed or not performed by an attorney authorized to practice law in Washington.

75.     Purported legal services recited in Defendants' standardized "Agreement," if performed, are performed solely incidental to the debt adjusting service contracted for through Defendants' standardized "Agreement."

76.     Defendants' standardized "Agreement" did not constitute the retention of an attorney licensed to practice law in the state of Washington.

77.     JEM is a debt adjuster within the meaning of RCW 18.28.010(2) and is engaged in debt adjusting within the meaning of RCW 18.28.010(1) with respect to services offered, contracted for, or performed pursuant to Defendants' standardized "Agreement."

78.     JEM is a for-profit company engaged in and holding itself out as engaged in the business of managing, settling, adjusting, prorating, or liquidating of the indebtedness of a debtor.

79.     LSSG is a debt adjuster within the meaning of RCW 18.28.010(2) and is engaged in debt adjusting within the meaning of RCW 18.28.010(1) with respect to its activities associated with Defendants' standardized "Agreement" and with respect to its business associations with Defendants and members of LSSG.

AMENDED CLASS ACTION COMPLAINT - 17
CASE NO. 3:11−cv−05054−RJB

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

80.     LSSG is a for-profit company engaged in and holding itself out as engaged in the business of managing, settlement, adjusting, prorating, or liquidating of the indebtedness of a debtor.

81.     Defendants' standardized "Agreement" provides for an initial fee of five hundred dollars ($500.00), a maintenance fee of forty-nine dollars ($49.00), and fees of fifteen percent (15%) of the clients' total scheduled debt for services to be performed by back-end debt adjusting company members of LSSG, including but not limited to JEM.

82.     Defendants' standardized "Agreement" unlawfully provides for an initial fee exceeding twenty-five dollars ($25.00), in violation of RCW 18.28.080.

83.     Defendants' standardized "Agreement" unlawfully provides for total fees exceeding fifteen percent (15%) of the consumers' total listed debt, in violation of RCW 18.28.080.

84.     Defendants' standardized "Agreement" unlawfully provides for fees exceeding fifteen percent (15%) of any one payment made by the consumer.

85.     Defendants' standardized "Agreement" with each Class Member, including Rosita Smith, was void *ab initio*.

86.     Defendants contracted for, received, made and/or retained from Class Members, including Rosita Smith, charges in excess of the maximums permitted by chapter 18.28 RCW.

**G.     The Class.**

87.     This action is brought on behalf of a Class composed of the following individuals: All Washington residents who executed an agreement with LHDR involving implementation, management, or maintenance of a debt settlement program.

88.     Members of the proposed Class are so numerous that their joinder is impractical. Based on information and belief, Class Members number in the thousands.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

89.     There are questions of law and fact common to the Class, including those delineated below.

90.     The claims and defenses of the named Plaintiff Rosita Smith are typical of the claims and defenses of the proposed Class.

91.     Named Plaintiff Rosita Smith is a member of the proposed Class, and she will fairly and adequately protect the interests of the proposed Class.

92.     Core common questions of law and fact central to claims of the Class predominate over individual questions, rendering certification of this matter as a class action appropriate under Fed. R. Civ. P. 23(b)(3).  Core common questions of law and fact include:

a.      Whether Defendants are debt adjusters or otherwise engaged in debt adjusting within the meaning of chapter 18.28 RCW;

b.      Whether debt adjusting activities performed by LHDR were performed by "attorneys-at-law" within the meaning of RCW 18.28.010(2)(a);

c.      Whether debt adjusting activities performed by LHDR were performed solely incidental to the practice of law;

d.      Whether Defendants' contracts with Class Members were void *ab initio*;

e.      Whether fees contracted for through Defendants' standardized "Agreement" violate RCW 18.28.080;

f.      Whether Defendants received, retained, and/or made charges in excess of those permitted under 18.28 RCW;

g.      Whether final injunctive relief is appropriate so as to protect Washington residents from the ongoing illegal business activities.

AMENDED CLASS ACTION COMPLAINT - 19
CASE NO. 3:11−cv−05054−RJB

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

93.     The class device is a superior method of adjudicating Class Members' claims as compared to other available methods for fairly and efficiently adjudicating this controversy.  Class Members are financially distressed individuals who have no meaningful recourse against Defendants absent collective pursuit of their relatively small monetary claims.  The value of each Class Member's claims, taken individually, is such that the claims have a negative value and cannot, as a practical matter, be pursued on an individual basis.

## V. <u>CLAIMS</u>

**A.     Injunctive Relief.**

94.     Defendants are engaged in concerted business activities, continuing in nature and directed at heavily indebted Washington residents that are unfair, deceptive, and criminal.

95.     Washington residents, including Class Members, remain generally unaware that Defendants' ongoing for-profit business activities are unfair, deceptive, criminally illegal, and otherwise wrongful.

96.     Defendants, on a continuing basis, are engaged in securing from Class Members periodic illegal and unowed fees.

97.     Class Members remain generally unaware that their contracts are void and that the fees being paid are unlawful and unowed.

98.     The Washington public, including Class Members, will suffer continuing, immediate, and irreparable injury absent the issuance of appropriate injunctive and equitable relief.

99.     The Washington public, including Class Members, has no complete, speedy, and adequate remedy at law with respect to Defendants' continuing wrongdoing.

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

100.     Injunctive relief is necessary to prevent further injury to Class Members and to the general Washington public, including the following relief:

a.     An order enjoining each Defendant from further business activities violating chapter 18.28 RCW;

b.     An order enjoining each Defendant from further business activities violating chapter 19.86 RCW;

c.     An order enjoining Defendants from securing additional fees from Class Members;

d.     An order directing that Defendants provide a complete accounting of i) the identities of each Washington resident who has engaged Defendants' services, ii) the total fees secured from each Washington resident, and iii) an order directing that Defendants return to each Washington resident all fees paid.

**B.     Consumer Protection Liability.**

101.     Defendants' conduct as alleged in this Amended Complaint occurred in trade or commerce.

102.     To the extent LHDR's activities involve the practice of law, LHDR's unfair and deceptive activities involve the entrepreneurial aspect of the practice of law.

103.     Defendants' conduct as alleged in this Amended Complaint impacts the public interest.

104.     Defendants' conduct as alleged in this Amended Complaint constitutes an unfair and/or deceptive business practices.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

105.     Defendants' conduct as alleged in this Amended Complaint proximately caused injury to Class Members, including Rosita Smith, in their business and/or property.  Injury suffered by Class Members includes but is not limited to fees and charges paid pursuant to Defendants' standardized "Agreement."

106.     Defendants, individually and in combination, are debt adjusters engaged in and/or holding themselves engaged in the for-profit business of managing, settling, adjusting, prorating, or liquidating of the indebtedness of a debtor, or receiving, directly or indirectly, funds for the purpose of distributing said funds among creditors in payment or partial payment of obligations of a debtor.

107.     Defendants, collectively, are a debt-adjusting agency in that they constitute an association, partnership, or corporation engaging in and holding itself out as engaging in the business of debt adjusting.

108.     Defendants individually and collectively contracted for, received, and/or made charges in excess of the maximums permitted by RCW 18.28.080.

109.     Defendants' contracts with Class Members, including Rosita Smith, were void *ab initio* pursuant to RCW 18.28.090.

110.     Defendants knowingly aided and abetted one another in the commission of acts and practices violating chapter 18.28 RCW.

111.     Defendants' conduct, individually and collectively, constitutes *per se* unfair or deceptive business practices pursuant to RCW 18.28.185.

112.     Pursuant to RCW 18.28.090, Class Members, including Rosita Smith, are entitled to recovery of all amounts paid less any amounts that actually went to a listed creditor.

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

113.    Class Members, including Rosita Smith, are entitled to judgment, jointly and

severally as against each Defendant, for harm suffered, pre-judgment interest, treble damages,

attorney fees, and costs of litigation.

**C.      Breach of Fiduciary Duty.**

114.    LHDR, Macey, Aleman, Searns, Hyslip, and LHDR's attorneys stood in a fiduciary

relationship to each Class Member, including Rosita Smith.

115.    LHDR, Macey, Aleman, Searns, Hyslip, and LHDR's attorneys had a duty to act for

the benefit of each Class Member, including Rosita Smith, on all matters within the scope of their

respective relationships.

116.    LHDR, Macey, Aleman, Searns, Hyslip, and LHDR's attorneys owed each Class

Member, including Rosita Smith, the utmost duty of good faith and fair dealing and a duty to put the

interests of Class Members before the interests of LHDR.

117.    LHDR, Macey, Aleman, Searns, Hyslip, and LHDR's attorneys were under a duty to

exercise a high standard of care in managing Class Members' financial affairs.

118.    LHDR, Macey, Aleman, Searns, Hyslip, and LHDR's attorneys assumed control and

responsibility over the Class Members' affairs within the context of their relationships.

119.    LHDR, Macey, Aleman, Searns, Hyslip, and LHDR's attorneys breached their duties

to Class Members, including Rosita Smith, by (among other things) failing to advise them that their

contracts were void, by failing to advise them that they were entitled to return of all money paid, by

failing to advise them of conflict of interests, by lending their names as attorneys to the unfair and

deceptive business activities of debt adjusting companies, including but not limited to JEM, Marshall

Banks, and LSSG, and by engaging in the unauthorized practice of law.

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

120.     LHDR breached its duties to Class Members, including Rosita Smith, by charging unreasonable fees, including fees prohibited by RCW 18.28.080.

121.     LHDR, Macey, Aleman, Searns, and Hyslip breached their duties to Class Members, including Rosita Smith, by receiving, directly or indirectly, charges exceeding those permitted under chapter 18.28 RCW.

122.     LHDR, Macey, Aleman, Searns, Hyslip, and LHDR attorneys breached their duties to Class Members, including Rosita Smith, by placing their own financial interests above the interests of Rosita Smith and other Class Members.

123.     LHDR, Macey, Aleman, and Searns, Hyslip, and LHDR attorneys breached their duties to Class Members, including Rosita Smith, by sharing fees with non-lawyers.

124.     Defendants' breach of fiduciary duties proximately caused harm to Class Members, including Rosita Smith.

**D.     Unjust Enrichment.**

125.     Class Members, including Rosita Smith, have paid fees that were not owed.

126.     Class Members, including Rosita Smith, and have paid fees that were criminally unlawful, pursuant to RCW 18.28.190.

127.     Class Members, including Rosita Smith, have paid predatorily high and illegal upfront fees, the receipt of which constitutes a *per se* unfair and deceptive business practice.

128.     Class Members, including Rosita Smith, have paid fees to a law firm that has undisclosed and impermissible conflicts of interest.

129.     Defendants have been unjustly enriched and unjustly profiteered through retention or receipt of, directly or indirectly, unlawful and unowed fees.

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

130.     Equity demands that Defendants disgorge all money received, directly or indirectly, from Class Members and all profits secured as a result of their unlawful business practices.

**E.     Aiding and Abetting.**

131.     Defendants knowingly gave substantial assistance to one another in the carrying out of the unlawful business scheme described in this Amended Complaint, which conduct and assistance proximately caused harm to Class Members, including Rosita Smith.

132.     Defendants aided and abetted one another in the commission of acts and practices violating chapter 18.28 RCW, proximately causing injury to Class Members, including Rosita Smith.

133.     Defendants aided and abetted one another in the commission of acts and practices violating chapter 19.86 RCW, proximately causing injury to Class Members, including Rosita Smith.

134.     Defendants aided and abetted one another in the commission of a business crime, proximately causing injury to Class Members, including Rosita Smith.

**F.     Civil Conspiracy.**

135.     Defendants entered into an agreement under which each of them, acting individually and in concert, willfully and knowingly carried out the business activities described in this Amended Complaint.

136.     The acts of Defendants, individually and in concert, were in furtherance of this conspiracy.

137.     As a proximate result of the wrongful acts of Defendants, individually and in concert, Class Members, including Rosita Smith, have suffered loss or injury.

138.     Defendants, therefore, are jointly and severally liable for all loss or injury suffered.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# VI. **DEMAND FOR RELIEF**

THEREFORE, Plaintiff, individually and as representative of the proposed Class, prays for relief as follows:

1.      An order certifying this matter as a class action pursuant to Fed. R. Civ. P. 23(b)(3), designating such Class or Classes as the Court may deem appropriate, appointing Plaintiff Rosita Smith as Class Representative and appointing such other Class Representatives as the Court may deem appropriate, and appointing undersigned counsel as Class Counsel;

2.      A final order enjoining Defendants from engaging in activities violating chapter 18.28 RCW, or chapter 19.86 RCW;

3.      A decree declaring Defendants' standardized "Agreement" void *ab initio* and declaring provisions of the subject contract unconscionable and unenforceable as a matter of public policy;

4.      An order disgorging Defendants from all fees and charges paid by Class Members and profits secured as a result of Class Members' payment of such fees;

5.      A final order and judgment for damages against Defendants, jointly and severally, and in favor of Rosita Smith and the Class, in an amount according to proof;

6.      An award of exemplary damages in the amount of three times the fees and charges paid by each Class Member;

7.      An order of disgorgement of attorney fees paid to LHDR;

8.      An award of prejudgment interest;

9.      An award of costs of litigation;

10.      An award of attorney fees, including fees pursuant to chapter 19.86 RCW; and

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

11.     Such other and further relief as the Court may deem just and/or equitable.

## VII. JURY DEMAND

Plaintiff demands a trial by jury in this matter.

DATED this 23rd day of November, 2011.

TERRELL MARSHALL DAUDT & WILLIE PLLC


By:  /s/ Toby J. Marshall, WSBA #32726
       Beth E. Terrell, WSBA #26759
       Email:  bterrell@tmdwlaw.com
       Toby J. Marshall, WSBA #32726
       Email:  tmarshall@tmdwlaw.com
       Jennifer Rust Murray, WSBA #36983
       Email:  jmurray@tmdwlaw.com
       936 North 34th Street, Suite 400
       Seattle, Washington  98103-8869
       Telephone:  206.816.6603
       Facsimile:   206.350.3528

       Darrell W. Scott, WSBA #20241
       Email:  scottgroup@mac.com
       Matthew J. Zuchetto, WSBA #33404
       Email:  matthewzuchetto@mac.com
       THE SCOTT LAW GROUP
       926 W Sprague Avenue, Suite 583
       Spokane, Washington 99201
       Telephone:  509.455.3966

       *Attorneys for Plaintiff*

1

<u>CERTIFICATE OF SERVICE</u>

2

3

I, Toby J. Marshall, hereby certify that on November 23, 2011, I electronically filed the

4

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such

5

filing to the following:

6

Gregory E Jackson
Email: gregj@fjtlaw.com

7

FREIMUND JACKSON TARDIFF & BENEDICT GARRETT
711 Capitol Way South, Suite 602 and 605

8

Olympia, Washington  98501
Telephone:  360.534.9960

9

10

Richard Epstein, *Admitted Pro Hac Vice*
Email: richard.epstein@gmlaw.com

11

Rebecca Bratter*, Admitted Pro Hac Vice*
Email: rebecca.bratter@gmlaw.com

12

GREENSPOON MARDER PA
100 W Cypress Creek Road, Suite 700

13

Ft. Lauderdale, Florida  33309
Telephone:  954.491.1190

14

15

*Attorneys for Defendants Legal Helpers Debt Resolution*
*LLC and JEM Group Inc.*

16

17

Todd Nunn
Email:  todd.nunn@klgates.com

18

K&L GATES LLP
925 Fourth Avenue, Suite 2900

19

Seattle, Washington  98104-1158
Telephone: 206.623.7580

20

21

Whitney J. Baran
Email:  whitney.baran@klgates.com

22

K&L GATES LLP
618 West Riverside Avenue, Suite 300

23

Spokane, Washington  99201-0602
Telephone: 509.624.2100

24

25

*Attorneys for Defendant Marshall Banks, LLC*

26

AMENDED CLASS ACTION COMPLAINT - 28
CASE NO. 3:11−cv−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

DATED this 23rd day of November, 2011.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By: /s/ Toby J. Marshall, WSBA #32726
Toby J. Marshall, WSBA #32726
Email:  tmarshall@tmdwlaw.com
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
Telephone:  206.816.6603

*Attorneys for Plaintiff*

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# — APPENDIX  A —

# Attorney Retainer Agreement

**I. Parties and Purposes:** This agreement for legal services is entered into on the date shown below between Legal Helpers Debt Resolution, LLC, also known as the law firm of Macey, Aleman, Hyslip & Searns (hereinafter referred to as LHDR) and ROSITA SMITH (hereinafter referred to as Client) relating to advice, counseling, analysis and negotiation services in regard to Client's unsecured debt and related financial circumstances regarding credit cards and line of credit obligations (unsecured debt). This contract is solely between LHDR, any assigns, or related entities that may be formed in the future and not any individual, partner, member, or employee of LHDR. LHDR is a debt relief agency and law firm that provides debt resolution services to its clients.

**II. Condition of Effectiveness:** This Agreement does not take effect, and LHDR has no obligation to provide any services, until both the Client and LHDR have executed a copy of this Agreement, delivered such copy to the other party, and the Client makes an initial flat fee retainer payment as provided for in Paragraph VIII.

**III. Limited Retention:** LHDR will review Client's current unsecured debt burden and thereafter negotiate and attempt to enter into settlements with creditors of the Client in an effort to modify and/or restructure Client's current unsecured debt. LHDR and its staff will timely respond to all Client inquiries and keep the Client informed as to all offers of debt modification. LHDR's obligation to negotiate shall only apply to specific unsecured debt obligations as disclosed by the Client. The details of such obligation are included in the Creditor Listing Form of this Agreement.

LHDR will not and does not provide the following services to Client:
   a.   Tax, financial planning or accounting advice;
   b.   Attempt to repair credit or correct entries on credit reports;
   c.   Bankruptcy services, except as specifically provided for below;
   d.   Represent Client in any matter before a court, including foreclosure proceedings or in any arbitration or hearing; or
   e.   Eliminate harassment or collection calls from creditors or collectors.

In the event a creditor or collector sues Client, whether related to a debt obligation or any other claim, LHDR is under no obligation to provide representation. LHDR will discuss specific debt related issues with Client and, if appropriate, offer additional legal services in regard to bankruptcy or other debt resolution services for Client's consideration.

**IV. Term:** The term of this agreement shall commence on the effective date and continue until the negotiated resolution of unsecured debt disclosed by Client in the Creditor Listing Form of this Agreement or until termination of this Agreement as provided in Paragraph XIV.

**V. Subcontracting Specific Tasks:** LHDR shall subcontract certain tasks including negotiations with creditors and collectors and certain customer support responsibilities to a third party. LHDR and other legally trained, licensed personnel will supervise all negotiations and customer support and ensure that these services comply with established procedures.

**VI. Client Obligations:** The Client will perform the following obligations:
   a.   Provide LHDR with all information and documents in regard to the unsecured debt it seeks to modify. Such information provided must contain the current account balance and the name of the creditor and account number;
   b.   As an ongoing obligation, Client will provide all information related to the unsecured debt as requested by LHDR. All information provided by Client must be truthful and accurate. LHDR is under no obligation to verify information supplied by Client. Client will forward all correspondence from creditors and collection agencies, including collection letters, demands and complaints within five (5) days to LHDR. If a creditor or collection agency telephones client, Client will not engage in debt resolution discussions. If a creditor or collection agency engages in harassing or abusive conduct, the Client will promptly notify LHDR and provide complete and accurate information regarding such contacts;
   c.   Client will timely respond to all requests, communications or documentation from LHDR or its representatives and will promptly provide LHDR with any change of address or other contact information;
   d.   Subsequent to the execution of this Agreement, Client shall, based on the advice of LHDR, determine and agree to a schedule of monthly payments based on the total amount of debt to be modified, including payment of appropriate fees and costs to LHDR (hereinafter referred to as Payment Confirmation Schedule), a copy of said schedule is attached hereto, incorporated by this reference. Client agrees to make all the payments on the designated dates; and
   e.   Client agrees to timely and fully pay all debt modification negotiated by LHDR and approved by Client.

**VII. Law Firm's Obligations:** In consideration for Client's obligations as stated in Section VI, LHDR agrees to use its best efforts to obtain a satisfactory result for Client by providing basic legal services in connection with the debt review and modification for Client on an efficient and cost-effective basis. Client expressly agrees that LHDR makes no specific guarantee regarding the outcome of the case, including but not limited to, successful modification or discharge of debt, and/or whether or not LHDR can successfully reduce the balance of all unsecured debts. LHDR offers its advice based on the information as disclosed by Client and Client agrees that LHDR is not responsible and assumes no liability for changes in the law, changes in Client's financial situation, and/or facts as revealed after review of documentation that could affect in any way any advice LHDR gives Client. LHDR will adhere to the specific disclosures regarding contingency fees and the minimum performance standards as outlined in the Payment Confirmation Schedule.

Enrollment Documents (CG-33020 Kazlow & Tucker Debt Relief )
©2009 All rights reserved

APR. 2.2010   1:27PM      KAZLOW & TUCKER DEBT RELIEF        NO.4797   P. 14

# Attorney Retainer Agreement Continued

**VIII. Fees and Costs:** In consideration for all services to be rendered, Client agrees to pay LHDR an initial flat fee retainer of five hundred dollars ($500) for debt review, analysis and structuring of a debt resolution plan. In addition, Client shall pay the law firm a monthly maintenance fee/cost for their debt resolution plan in the amount of $49.00 commencing in the 2nd month of their debt resolution plan.

If LHDR is able to obtain a sixty-five percent (65%) or greater reduction of Client's total scheduled debt of the original balance on the accounts listed in the Creditor Listing Form, Client agrees to pay LHDR on a contingency fee basis five percent (5%) of the amount of debt reduction (total amount enrolled in the program less amount of settlement) accomplished by the work of LHDR and its staff, which will be reconciled at the end of the program. The initial $500 flat fee retainer and other administrative legal fees paid by Client shall be fully credited as a partial payment towards the client's obligation for the 5% contingency fee. Client agrees to have their initial flat fee retainer of $500 automatically drafted by LHDR (or its designees) per Exhibit B - Payment Schedule from an authorized Federal Deposit Insurance Corporation (referred to as "F.D.I.C.") insured bank account on 04/22/2010 . **(MM/DD/YYYY)**

The implementation, management and maintenance of a debt resolution plan by LHDR shall be performed under the direct supervision of LHDR by JEM Group, Inc. (JEM) at a cost of fifteen percent (15%) of the Client's total scheduled debt (hereinafter referred to as Service Cost). LHDR has a non-exclusive reciprocal referral agreement with JEM to provide these services under LHDR's direct supervision. These are services required for the debt resolution plan, but are not legal services. There is no attorney-client relationship between Client and JEM in regard to these services and any specific communications between client and JEM are not protected by attorney-client privilege. JEM cannot and will not provide any legal advice to the Client other than as communicated through JEM by LHDR and under LHDR's supervision. The Service Cost shall be paid by Client per Exhibit B - Payment Schedule commencing immediately following the preparation of the debt resolution plan. Client understands and agrees to set aside as per Exhibit B - Payment Schedule in an F.D.I.C. insured bank account for LHDR to withdraw this Service Cost for JEM's work in the management of the debt resolution plan and for Client to accumulate settlement funds to be used for settlement purposes. Client agrees to have their payments of Service Cost to be automatically drafted by LHDR (or its designees) from an authorized F.D.I.C. insured bank account with Client's first payment to start on 04/26/2010 and thereafter on day 26 of the following months. **(MM/DD/YYYY)**

**IX. Electronic Payment Authorizations:** By signing this Agreement, Client authorizes LHDR (or its designees) to deduct all legal fees and Service Cost via electronic payment authorizations from an authorized checking, savings, or other F.D.I.C. insured bank account. LHDR requires a minimum of five (5) business days to change any scheduled Electronic Funds Transfer ("EFT") from an authorized bank account. It is also understood that Client shall not make or request changes of his or her payment schedule during the first ninety (90) days after execution of this Agreement. If any payment change occurs within the first ninety (90) days of execution of this Agreement, Client will be charged an additional cost of twenty-five dollars ($25). It is also understood that Client shall not make or request more than two (2) changes of his or her payment schedule within a twelve (12) month period after the first ninety (90) days of execution of this Agreement without termination from the program. Non-sufficient funds "NSF" in Client's authorized bank account, on Client's scheduled payment date, is considered a non-payment and there will be a twenty-five dollar ($25) cost automatically charged to Client's account for any NSF transactions.

**X. Client Acknowledgement:** Client acknowledges and agrees that:

    a.  The outcome of LHDR's negotiation of any specified account entered by Client into the debt negotiation program is uncertain and results may vary;

    b.  The service provided by LHDR does not include the modification, collection or improvement of Client's credit reports or credit score;

    c.  LHDR's debt negotiation may not prevent creditor or collection agency harassment, nor prevent phone calls on behalf of creditors or collection agencies to Client;

    d.  Client may be sued by creditors or collection agencies and in that event LHDR's services pursuant to this agreement does not include legal representation on those matters;

    e.  The discharge of indebtedness may be considered a taxable event and Client should consult a tax professional for any such service;

    f.  Client will continue to incur late fees and penalties on the accounts during the program; and

    g.  Client's participation in the program may adversely affect the clients' credit score.

    h.  LHDR's and its subcontractor's ability to successfully negotiate reduction of enrolled accounts is based on the Client setting aside monies for settlement

**XI. Additional Debt:** Client should not incur any new or additional debt and should refrain from using or obtaining credit during the LHDR debt resolution representation. Client understands all credit cards and/or lines of credit shall be closed and that no additional credit cards and/or lines of credit should be applied for during the LHDR debt resolution representation. Client understands that they may keep one credit card, not to be accepted in the program, open for emergency purposes only. This credit card should not be from the same issuing bank as any accounts entered by Client into the LHDR debt resolution representation.

Enrollment Documents (CG-33020 Kazlow & Tucker Debt Relief )
©2009 All rights reserved

## Attorney Retainer Agreement Continued

**XII. Debt Resolution Minimum Standards of Representation:** LHDR maintains a standard of representation for each individual account entered by Client into the LHDR debt resolution plan, of a minimum of settlement debt reduction of thirty-five percent (35%) of the debt's face value at the time of settlement, including interest, penalties and late fees. In the event that LHDR does not meet this minimum standard for a particular account, it shall refund the pro rata share of the 15% Service Cost paid to JEM for such work under the direct supervision of LHDR and LHDR shall further direct JEM to settle that individual account for Client at no additional cost. This refund is subject to all of the following terms and conditions:

   a. Client must act in complete compliance with this agreement and shall cooperate with LHDR under this agreement;
   b. Client must not default on any Service Cost payment obligations under an agreed-upon settlement for any accepted account;
   c. If for any reason, Client is unwilling or is unable to accept a proposed settlement on any contracted account with a settlement debt reduction of thirty-five percent (35%) of the debt's face value at the time of settlement minus fees and costs of this agreement, or Client otherwise fails or refuses to accept any such settlement on any contracted account with a settlement debt reduction of thirty-five percent (35%) of the debt's current face value, minus fees and costs of this agreement this Limited Guarantee shall be null and void, and have no force or effect;
   d. Should LHDR be unable to settle one or more of Client's individual accounts accepted pursuant to this agreement, any refund shall be calculated on a pro rata basis as to the Service Cost paid to LHDR attributable to such individual unsettled account;
   e. This minimum standard provision does not apply to any Client's individual accounts which have had balance transfers, cash advances, accounts initially accepted with balances fewer than one thousand dollars ($1,000) or where there has been a law suit already filed on such individual account. LHDR will discuss with the Client other legal remedies in the event of such circumstances including Chapter 7 or Chapter 13 bankruptcy;
   f. Client must have completed the program and not terminated the Agreement prior to LHDR having an opportunity to settle all accounts on the Creditor Listing Form; and
   g. Any accounts subject to garnishment are excluded from the minimum standard representation.

**XIII. Impact on Credit Rating:** Client acknowledges that nonpayment, minimal payments, or settlement payments to creditors may result in derogatory credit information transmitted to the major credit reporting agencies, and in the event that any negative effect is caused to Client's credit profile, LHDR does not provide credit repair services and Client acknowledges herein that it received proper notice regarding possible consequences to the Client's credit rating.

**XIV. Termination and Severability:** Client agrees that both parties may sever the relationship at any time. The party choosing to terminate the agreement will document the decision by sending a 30-day written notice to the other party. The termination will occur upon receipt of such notice. If such termination occurs, the Client shall only be responsible for the fees and costs incurred through the date of cancellation and the initial flat fee retainer. LHDR may cancel this agreement if the Client fails to make two (2) successive monthly payments. If any legal action is brought regarding this agreement, the prevailing party shall be entitled to legal fees and court costs.

**XV. Authorizations:** The Client authorizes LHDR as follows:
   a. The Client authorizes LHDR to disclose information regarding Client's financial condition or status to any creditor or collector in regard to the debt resolution plan. Further, LHDR may obtain information concerning Client from such creditors;
   b. Client authorizes LHDR to disclose to creditors and collectors that LHDR and its representatives, or subcontractors, are authorized to negotiate debt resolution terms on behalf of Client; and
   c. Client authorizes LHDR to negotiate and modify the unsecured debt listed in the Creditor Listing Form of this Agreement.

**XVI. Confidentiality:** LHDR agrees that any information provided by Client will be kept confidential and only be used in providing the negotiation and modification services described in this Agreement.

**XVII. Disclosures and Disclaimers:** Client acknowledges and understands that LHDR will not agree to provide the services under this Agreement absent Client's full understanding and acceptance of the basis for the work to be performed. LHDR and its agents and representatives provide services related to the modification and restructure of the Client's unsecured debt. LHDR cannot and does not make any guarantee of any kind regarding the success of any negotiation in regard to such modification. Client acknowledges that each case is unique and that results may vary.

Client understands that there are other remedies available in regard to their goal of debt resolution including consumer credit counseling and bankruptcy. (See Exhibit A of this Agreement for further information).

Consumer Credit Counseling may impact less on the Client's credit rating and reduce interest rates on current debt, but generally will require payment of the majority of the Client's existing debt. Bankruptcy may discharge the majority of Client's debts; however Client has requested LHDR to pursue other alternatives at this time to avoid bankruptcy. LHDR will discuss and advise Client as to the bankruptcy option, including fees and costs, at any time that Client's circumstances change or Client requests such consultation. There are no additional fees or costs required from Client for such consultation and advice regarding bankruptcy. In the event that the Client elects to pursue a bankruptcy option in the future with LHDR, a full disclosure regarding fees shall be given including any credits or pro rata reduction in fees based on LHDR's representation of the Client pursuant to this Agreement.

Enrollment Documents (CG-33020 Kazlow & Tucker Debt Relief)
©2009 All rights reserved

APR. 2. 2010  1:27PM   KAZLOW & TUCKER DEBT RELIEF          NU. 1757  r. 12

## Attorney Retainer Agreement Continued

**XVIII. Arbitration:** In the event of any claim or dispute between Client and LHDR related to the Agreement or related to any performance of any services related to this Agreement, such claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request. The parties shall initially agree on a single arbitrator to resolve the dispute. The matter may be arbitrated either by the Judicial Arbitration Mediation Service or American Arbitration Association, as mutually agreed upon by the parties or selected by the party filing the claim. The arbitration shall be conducted in either the county in which Client resides, or the closest metropolitan county. Any decision of the arbitrator shall be final and may be entered into any judgment in any court of competent jurisdiction. The conduct of the arbitration shall be subject to the then current rules of the arbitration service. The costs of arbitration, excluding legal fees, will be split equally or be born by the losing party, as determined by the arbitrator. The parties shall bear their own legal fees.

**XIX. Integration:** This Agreement and all schedules are the complete and exclusive statement of the Agreement of the parties and supersede any proposal, prior agreement, oral or written, and any other communication related to this matter.

**XX. Enforceability:** In the event that any portion of this Agreement is determined to be illegal or unenforceable, the determination will not affect the validity or enforceability of the remaining provisions of this Agreement, all of which shall remain in full force and effect. The parties agree to insert another provision that will be valid to come in closest to the original intent of the Agreement.

**XXI. Amendment:** This Agreement may be modified by a subsequent agreement by the parties only by an instrument in writing, signed by both LHDR and Client and no waiver of any provision or condition of this Agreement shall be effective or binding unless such waiver be in writing and signed by the party claiming to have given such waiver.

Witness our hands and seals this 02 day of April, **2010.**

Signature of LHDR

Acknowledged and Agreed to:

**ROSITA SMITH**
_____
**Client Printed Name**

_____
**Client Signature**

4-2-'10
_____
**Date**

_____
**Co-Client Printed Name**

_____
**Co-Client Signature**

_____
**Date**

Enrollment Documents (CG-33020 Kazlow & Tucker Debt Relief )
©2009 All rights reserved

## Exhibit A: Disclosure and Election of Services

LHDR is a full service debt resolution law firm including debt negotiation and restructuring, bankruptcy services and where appropriate referral to consumer credit counseling agencies. The following provides information as to all these approaches to debt resolution for your review. Clients should fully understand the advantages and disadvantages of each to make an informed decision.

**Credit Counseling** offers services that will allow you to work with a certified credit counselor to devise a plan that is tailored to your specific needs and goals. Credit counseling agencies often provide services for free and will help to educate you about how to avoid financial problems in the future by offering debt management classes or seminars. They do not erase your debt. Instead they work with you to budget money so that you can pay off the debt often times by debt consolidation. Collections by your creditors may continue while using a credit counselor and most plans require you to pay your entire debt balance over the life of the plan. Consumer credit counseling agencies are required to advise you that they are compensated by the creditors based on the amount of debt they are able to have you pay.

**Bankruptcy** will usually discharge your unsecured debt and your creditors are not permitted to contact you once you have filed with the court. There are two kinds of bankruptcy; Chapter 13 bankruptcy where you are generally able to keep property that is mortgaged such as your house or car and are expected to repay debts in three to five years and Chapter 7 bankruptcy where you must give up all non-exempt property and assets that you own in exchange for a discharge of most debt. Bankruptcy may be appropriate if you have pending foreclosures, collection litigation or wage garnishments, however, you will generally be unable to establish credit for up to ten years. In 2005, the bankruptcy law was changed to make it more difficult for some consumers to file Chapter 7 bankruptcy based on a financial means test and credit counseling requirements that may require a repayment of some of your debt.

**Debt Negotiation** is a process where the law firm, based on your specific circumstances, develops a plan to manage your debt resolution with your creditors. In general terms, it is a process of negotiating with your creditors for a lower balance/forgiveness of debt, a reduced interest rate, a reduced monthly payment or other restructuring alternatives. To be successful in debt negotiation, you need to have sufficient cash flow to meet your living expenses each month and provide some funds towards resolution of your debt.
LHDR will contact all your unsecured creditors in writing to inform them that you are represented by the law firm and that we are advising you as to all alternatives for debt resolution. As you have indicated in your compliance review, you prefer LHDR to attempt debt negotiation as an alternative to bankruptcy. However, if your financial circumstances change, we will advise you as to other debt resolution alternatives outlined above, so you can make an informed decision based on our advice.

If you have any questions regarding the above options, please contact us for further explanation. If you are ready to proceed, sign below your acknowledgement that you have reviewed all possible debt resolution options and have determined that debt negotiation by LHDR is your preference, subject to your ability to request a different alternative if your circumstances change in the future. Please review Section XVII of this Agreement prior to executing your informed consent below.

*I have reviewed all debt resolution options available to me including bankruptcy and consumer credit counseling and elect to pursue debt negotiation services with LHDR, subject to my ability to request other alternatives, based on changes in my financial circumstances.*

**ROSITA SMITH**                               *Rosita Smith*                          4-2-10

*Applicant Printed Name*        .              *Applicant Signature*                   *Date*


_____              _____        _____

*Co-Applicant Printed Name*                    *Co-Applicant Signature*                *Date*

Enrollment Documents (CG-33020 Kazlow & Tucker Debt Relief )
©2009 All rights reserved

APR. 2. 2010   1:20PM   KAZLOW & TUCKER DEBT RELIEF

# Exhibit B - Payment Confirmation Schedule          A.IP.40.15.42.2

| Exhibit B - Payment Confirmation Schedule | | | | | |
|---|---|---|---|---|---|
| Total Amount of Debt | | $47,683.19 | Estimated Settlements | | $19,073.26 |
| Service Cost Percentage: | | 15% | Estimated Total Cost Less Savings Percentage | | 19.21% |
| Estimated Total Fees & Settlements: | | $29,049.92 | Estimated Total Savings | | $18,633.43 |

| Month in Program | Service Cost | Maintenance Cost | Settlement Reserves | Trust Fees | Total Draft | Draft Due Date |
|---|---|---|---|---|---|---|
| Retainer Fee | $0.00 | $0.00 | $0.00 | $0.00 | $500.00 | 4/22/2010 |
| 1 | $672.26 | $0.00 | $0.00 | $7.50 | $679.76 | 4/26/2010 |
| 2 | $623.26 | $49.00 | $0.00 | $7.50 | $679.76 | 5/26/2010 |
| 3 | $623.26 | $49.00 | $0.00 | $7.50 | $679.76 | 6/26/2010 |
| 4 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 7/26/2010 |
| 5 | $346.91 | $49.00 | $274.35 | $7.50 | $679.76 | 8/26/2010 |
| 6 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 9/26/2010 |
| 7 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 10/26/2010 |
| 8 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 11/26/2010 |
| 9 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 12/26/2010 |
| 10 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 1/26/2011 |
| 11 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 2/26/2011 |
| 12 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 3/26/2011 |
| 13 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 4/26/2011 |
| 14 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 5/26/2011 |
| 15 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 6/26/2011 |
| 16 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 7/26/2011 |
| 17 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 8/26/2011 |
| 18 | $348.91 | $49.00 | $274.35 | $7.50 | $679.76 | 9/26/2011 |
| 19 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 10/26/2011 |
| 20 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 11/26/2011 |
| 21 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 12/26/2011 |
| 22 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 1/26/2012 |
| 23 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 2/26/2012 |
| 24 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 3/26/2012 |

Enrollment Documents (CG-33020 Kazlow & Tucker Debt Relief )
©2009 All rights reserved

## Exhibit B - Payment Confirmation Schedule Continued...

| Month in Program | Service Cost | Maintenance Cost | Settlement Reserves | Trust Fees | Total Draft | Draft Due Date |
|---|---|---|---|---|---|---|
| 25 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 4/26/2012 |
| 26 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 5/26/2012 |
| 27 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 6/26/2012 |
| 28 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 7/26/2012 |
| 29 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 8/26/2012 |
| 30 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 9/26/2012 |
| 31 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 10/26/2012 |
| 32 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 11/26/2012 |
| 33 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 12/26/2012 |
| 34 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 1/26/2013 |
| 35 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 2/26/2013 |
| 36 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 3/26/2013 |
| 37 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 4/26/2013 |
| 38 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 5/26/2013 |
| 39 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 6/26/2013 |
| 40 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 7/26/2013 |
| 41 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 8/26/2013 |
| 42 | $0.00 | $49.00 | $623.26 | $7.50 | $679.76 | 9/26/2013 |

Less than 50% Saving's Plan: I understand that a less than 50% savings plan is not recommended and will require that I accumulate more funds or stay in the program a longer period of time than on the schedule provided. Based on my current financial hardship I only have the ability to save at the rate of less than 50% and will add more within 6 months. The amount of all savings is only an estimate since actual settlement amounts cannot be granted.

**The Savings Plan above is only an estimate of the amount needed for settlement.**

**ROSITA SMITH** _____    X _Rosita Smith_    X _4-2-10_

*Client Printed Name*    *Client Signature*    *Date*


_____    X _____    X _____

*Co-Client Printed Name*    *Co-Client Signature*    *Date*

Enrollment Documents (CG-33020 Kaziow & Tucker Debt Relief )
©2009 All rights reserved