THE HONORABLE ROBERT J. BRYAN

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
WASHINGTON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

| | |
|---|---|
| ROSITA H. SMITH, individually and on behalf of all similarly situated Washington State Residents<br><br>                Plaintiff,<br><br>    v.<br><br>LEGAL HELPERS DEBT RESOLUTION, LLC, a Nevada limited liability company; LEGAL SERVICES SUPPORT GROUP, LLC, a Nevada corporation; JEM GROUP, INC., a Nevada corporation; MARSHALL BANKS, LLC, a California company; JOANNE GARNEAU, individually and on behalf of the marital community of JOANNE GARNEAU and ARTHUR GARNEAU; JASON SEARNS, individually and on behalf of the marital community of JASON SEARNS and JANE DOE SEARNS; THOMAS G. MACEY, individually and on behalf of the marital community of THOMAS G. MACEY and JANE DOE MACEY; and JEFFREY ALEMAN, individually and on behalf of the marital community of JEFFREY ALEMAN and JANE DOE ALEMAN; JEFFREY HYSLIP, individually and on behalf of the marital community of JEFFREY HYSLIP and JANE DOE HYSLIP; and JOHN AND JANE DOES 1-25,<br><br>                Defendants. | NO.  3:11−cv−05054−RJB<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Noted for Consideration:**<br>  **Friday, August 17, 2012** |

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ..................................................................................1

II.   STATEMENT OF THE FACTS ...........................................................1

    A.    Relevant Factual Background.....................................................1

    B.    Plaintiff Thoroughly Investigated the Claims of the Proposed Class...................3

    C.    The Proposed Settlement Agreements.........................................5

        1.    The LHDR Settlement Agreement ...............................5

        2.    The Marshall Banks Settlement Agreement .................7

        3.    The Notice Program ......................................................8

III.  ARGUMENT AND AUTHORITY .......................................................9

    A.    Settlement and Class Action Approval Process ........................9

    B.    The Criteria for Settlement Approval Are Satisfied.................11

        1.    The Settlement Agreements Are the Product of Serious, Informed, and Arm's-Length Negotiations ...............11

        2.    The Settlements Provide Substantial Relief for Settlement Class and Subclass Members and Treat All Settlement Class and Subclass Members Fairly.........................12

        3.    The Settlement Agreements Are Fair and Reasonable in Light of the Alleged Claims and Defenses ......................14

        4.    The Class Representative Enhancement Award Is Reasonable .............15

        5.    The Requested Attorneys' Fees and Costs Are Fair and Reasonable...................15

    C.    Provisional Certification of the Class Is Appropriate...........16

    D.    Provisional Certification of the Subclass Is Appropriate .....17

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - i
CASE NO. 3:11−CV−05054−RJB

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

E.      The Proposed Notice Program Is Constitutionally Sound.................................18

F.      Scheduling a Final Approval Hearing Is Appropriate.........................................19

IV.     CONCLUSION .........................................................................................................20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - ii
CASE NO. 3:11−CV−05054−RJB

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

## TABLE OF AUTHORITIES

2

**Page No.**

3

### FEDERAL CASES

4

5    *Class Plaintiffs v. City of Seattle*,
        955 F.2d 1268 (9th Cir. 1992) ............................................................9, 10, 11
6

7    *Connor v. Automated Accounts, Inc.*,
        202 F.R.D. 265 (E.D. Wash. 2001) ..................................................................17
8

9    *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
        No. 05-05437 RBL, 2008 WL 1901988 (W.D. Wash. Apr. 24, 2008) ..........15

10   *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998) ..................................................................11, 12
11

12   *Hansen v. Ticket Track, Inc.*,
        213 F.R.D. 412 (W.D. Wash. 2003) ........................................................17, 18
13

14   *Hughes v. Microsoft Corp.*,
        No. C98-1646C, C93-0178C, 2001 WL 34089697 (W.D. Wash.
15      Mar. 26, 2001) ................................................................................................11

16   *In re Mego Fin. Corp. Secs. Litig.*,
        213 F.3d 454 (9th Cir. 2000) ....................................................................13, 15
17

18   *In re Omnivision Tech., Inc.*,
        559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................................13
19

20   *In re Phenylpropanolamine (PPA) Prods. Liability Litig.*,
        227 F.R.D. 553 (W.D. Wash. 2004) ................................................................12

21   *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
        244 F.3d 1152 (9th Cir. 2001) ........................................................................17
22

23   *Mullane v. Cent. Hanover Bank & Trust Co.*,
        339 U.S. 306 (1950) ........................................................................................18
24

25   *Orvis v. Spokane County*, --- F.R.D. ----,
        2012 WL 966935 (E.D. Wash. Mar. 21, 2012) ..............................................11

26

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - iii
CASE NO. 3:11−cv−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

*Pelletz v. Weyerhaeuser Co.*,
   255 F.R.D. 537 (W.D. Wash. 2009) ............................................................................11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ....................................................................................................18

*Rodriguez v. Carlson*,
   166 F.R.D. 465 (E.D. Wash. 1996) ............................................................................16

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ......................................................................................13

*Rosario v. Cook County*,
   101 F.R.D. 659 (N.D. Ill. 1983) ................................................................................18

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ......................................................................................18

## STATE CASES

*Carlsen v. Global Client Solutions, LLC*,
   171 Wn.2d 486, 256 P.3d 321 (2011) ..........................................................................2

## STATE STATUTES

RCW 18.28.010(1) .............................................................................................................1

RCW 18.28.010(2)(a) ....................................................................................................2, 14

RCW 18.28.080 .................................................................................................................2

## FEDERAL RULES

Fed. R. Civ. P. 23 ...............................................................................................16, 17, 18

## OTHER AUTHORITIES

1 William B. Rubenstein, Newberg on Class Actions, § 3:16 (5th ed. June 2012) ..............17, 18

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.25 (4th ed. 2002) .........10

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) .....9, 10

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - iv
CASE NO. 3:11−cv−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Manual for Complex Litigation (Fourth) (2004) § 13.14 ........................................................11

Manual for Complex Litigation (Fourth) (2004) § 21.62 ........................................................15

Manual for Complex Litigation (Fourth) (2004) § 21.63 ....................................................11, 16

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - v
CASE NO. 3:11−CV−05054−RJB

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# I. INTRODUCTION

Since Defendants filed their Notices of Appeal of this Court's order denying their motions for arbitration, Plaintiff Rosita Smith has reached settlements with Defendants Legal Helpers Debt Resolution, LLC ("LHDR"), Jason Searns, Thomas G. Macey, Jeffrey Aleman and Jeffrey Hyslip (collectively, the "LHDR Defendants"); and Defendant Marshall Banks (collectively the "Settlements").  The LHDR Defendants and Marshall Banks have dismissed their appeals with leave to reinstate them if the Settlements are not approved by this Court. Defendants Legal Services Support Group ("LSSG"), JEM Group, Joanne Garneau, and Arthur Garneau are proceeding with their appeals.

Plaintiff now respectfully moves the Court for preliminary approval of the Settlements. For the reasons set forth in this memorandum and the supporting documents, the Settlements are fair and reasonable and serve the best interests of the settlement class members. Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlements, including the settlement payments to the class and the fees and costs payments to Plaintiff's counsel; (2) provisionally certify the proposed settlement class and settlement subclass; (3) appoint as class counsel the law firms of The Scott Law Group, P.S., and Terrell Marshall Daudt & Willie PLLC; (4) appoint Rosita Smith as representative of the class and subclass; (5) approve the proposed notice plan and class notice forms; (6) appoint The Scott Law Group, P.S., to serve as the claims administrator; and (7) schedule the final fairness hearing and related dates as proposed by the parties.

# II. STATEMENT OF THE FACTS

## A.     Relevant Factual Background

This case involves the for-profit "debt adjusting" industry.  Debt adjusting is the activity of managing, counseling, settling, adjusting, prorating, or liquidating the indebtedness of a debtor.  RCW 18.28.010(1).  Washington's Debt Adjusting Act ("DAA") limits the fees that a debt adjuster may charge for debt adjusting services to (1) an initial charge of no more than $25, which must be considered part of the total fee; (2) a maximum of 15% of any one payment

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 1
CASE NO. 3:11−cv−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  made by a debtor to a creditor; and (3) a maximum total fee of 15% of the debt being adjusted.

2  RCW 18.28.080.  Companies that attempt to negotiate the settlement of credit card debts on

3  behalf of consumers are among the enterprises subject to the DAA.  *See Carlsen v. Global*

4  *Client Solutions, LLC*, 171 Wn.2d 486, 256 P.3d 321 (2011).

5      The DAA does not apply to attorneys when they are providing debt settlement services

6  "solely incidental to the practice of their profession."  RCW 18.28.010(2)(a).  Plaintiff alleges

7  that in order to avoid the statute's fee limits, long-established debt settlement companies have

8  associated themselves with attorneys who lend their names to the debt adjusting activities of the

9  debt adjusting companies.  Plaintiff alleges these entities construct and maintain the façade that

10 debt adjusting services are being offered and performed by the attorney.  Plaintiff alleges

11 Defendants have engaged in just such a scheme and that it constitutes a *per se* violation of

12 Washington's Consumer Protection Act.

13     On January 19, 2011, Plaintiff Rosita Smith filed a Class Action Complaint in this

14 Court against Defendants Legal Helpers Debt Resolution, LLC ("LHDR"), Marshall Banks,

15 LLC ("Marshall Banks"), and JEM Group, Inc. ("JEM").  *See generally* Class Action

16 Complaint (Dkt. No. 1).  Plaintiff claimed Defendants' practices were in violation of

17 Washington law and sought injunctive relief, restitution, and damages on behalf of herself and

18 all similarly situated Washington residents who entered into an attorney retainer agreement

19 with LHDR and/or a debt settlement agreement with Marshall Banks involving

20 implementation, management, or maintenance of a debt settlement program by JEM.  *See id.*

21 Plaintiff brought the action as a class action pursuant to Fed. R. Civ. P. 23.  *Id.*

22     Defendants moved to dismiss the lawsuit asserting that attorneys are exempt from the

23 DAA and that the suit was subject to mandatory arbitration.  The Court denied both motions.

24 Dkt. Nos. 95, 96.  Defendants appealed.  Plaintiff subsequently moved to amend her complaint

25 to join as defendants Jason Searns, Thomas Macey, Jeffrey Aleman, Jeffrey Hyslip, (the

26 principal behind LHDR), LSSG, and Joanne Garneau (the owner and manager of JEM).

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 2
CASE NO. 3:11−CV−05054−RJB

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1     Shortly after Defendants filed for appellate review, the parties agreed to stay the appeals

2 and certain deadlines in the underlying case pending mediation. *See* Dkt. Nos. 124–127.

3 Plaintiff, the LHDR Defendants, and JEM engaged in a full-day mediation with the assistance

4 of a retired judge, the Honorable William J. Cahill. *Id.* Although a settlement was not reached

5 that day, the LHDR Defendants continued to discuss potential settlement with Plaintiff.

6 Declaration of Toby J. Marshall ("Marshall Decl.") ¶¶ 2–4. At all times the negotiations were

7 adversarial, non-collusive, and at arm's length. *Id.* The discussions culminated in a Class

8 Action Settlement Agreement and Release (the "LHDR Settlement Agreement") between

9 Plaintiff and the LHDR Defendants. *See* Marshall Decl., Ex. 1.

10     Around the same time, Marshall Banks approached Plaintiff's counsel about the

11 possibility of settlement. Marshall Decl. ¶ 5. Marshall Banks and Plaintiff's counsel held

12 several settlement discussions, all of which were adversarial, non-collusive, and at arm's

13 length. Marshall Banks served as the "front-end" debt adjusting company for only twenty-three

14 of the proposed class members. Its position was that it should be liable only for damages that

15 flowed from these class members. Plaintiff required Marshall Banks to produce, and Marshall

16 Banks did produce, information regarding the amount of fees Marshall Banks received in

17 relation to the twenty-three class members that Marshall Banks solicited for the LHDR debt

18 settlement program. On July 2, 2012, Marshall Banks and Plaintiff executed a final settlement

19 agreement (the "Marshall Banks Settlement Agreement"). *See* Marshall Decl., Ex. 2.

20     Neither settlement affects the rights of Plaintiff and the proposed class to pursue their

21 claims against JEM or any other entity.

22 **B.     Plaintiff Thoroughly Investigated the Claims of the Proposed Class**

23     Plaintiff's counsel have extensive experience investigating, litigating, certifying, and

24 settling class action cases like this one. *See generally* Scott Decl. ¶¶ 2–8; Marshall Decl.

25 ¶¶ 10–15. Moreover, Plaintiff's counsel have a thorough understanding of the debt-adjusting

26 industry and the legal claims that have arisen due to unlawful activity within that industry. *See*

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 3
CASE NO. 3:11−CV−05054−RJB

1   *id.* Indeed, Plaintiff's counsel have been actively pursuing several similar cases against other

2   entities engaged in debt adjusting. *See* Scott Decl. ¶¶ 3–8.

3          Before filing the action in January 2011, Plaintiff's counsel spent several months

4   investigating the factual bases of Ms. Smith's claims against Defendants, researching related

5   legal issues, and preparing the complaint. Scott Decl. ¶ 9–11. After the complaint was filed,

6   Plaintiff's counsel conducted substantial discovery, requesting and receiving thousands of

7   pages of documents from Defendants, including their operating agreements, agreements with

8   consumers, training materials, and computer software manuals. Marshall Decl. ¶ 6.

9   Defendants also produced information regarding the number of Washington consumers to

10  whom they have provided debt adjusting services and the amount of fees that these consumers

11  paid. *See id.* During settlement discussions, Defendants supplemented this information. *Id.*

12  These documents permitted Plaintiff's counsel to further analyze the factual bases for their

13  claims and to calculate class-wide damages. Among other things, Plaintiff's counsel learned

14  that Washington consumers paid Defendants a total of $4.765 million in debt adjusting fees.

15  *Id.* Out of that, Defendants refunded $250,000 to consumers and collectively retained the

16  remaining $4.515 million. *Id.* The vast majority of these retained funds went to JEM. *Id.*

17  LHDR received less than $600,000 and Marshall Banks received just over $62,000. *Id.*

18  Nevertheless, Plaintiff maintains the Defendants (both settling and non-settling) are liable to

19  the Class for all fees paid, regardless of how those fees were disbursed among the Defendants.

20  *Id.*

21          Plaintiff's counsel also spent a considerable amount of time interviewing dozens of

22  Washington consumers who had signed agreements with LHDR. Marshall Decl. ¶ 7; Scott

23  Decl. ¶ 12. In all, Plaintiff's counsel estimate they interviewed approximately 121 Washington

24  residents enrolled in Defendants' debt adjusting program. *Id.* ¶ 7; Scott Decl. ¶ 12. These

25  interviews proved very helpful in allowing counsel to assess the strengths and weaknesses of

26  the class claims. *Id.*

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 4
CASE NO. 3:11−CV−05054−RJB

**C.      The Proposed Settlement Agreements**

The Settlements' details are contained in the LHDR Settlement Agreement and the Marshall Banks Settlement Agreement signed by the respective settling parties (collectively "Settlement Agreements").  *See* Marshall Decl., Exs. 1–2.  For purposes of preliminary approval, the following summarizes the Settlement Agreements' terms.

1.      The LHDR Settlement Agreement

The proposed settlement class includes all Washington residents who executed an agreement with LHDR involving implementation, management, or maintenance of a debt settlement program and who did not execute a timely and valid exclusion request (the "Settlement Class").  LHDR Settlement Agreement § II.A.  For the benefit of this Settlement Class, the LHDR Defendants have paid a total of $2 million into the Scott Law Group's IOLTA trust account (the "LHDR Settlement Trust").  *Id*. § II.B.  Each Settlement Class member will receive a proportional share of the funds remaining in the LHDR Settlement Trust after deducting any Court-awarded attorneys' fees and costs, notice and claims administration costs, class representative incentive award amounts, or other Court-approved expenses (the "Net LHDR Settlement Proceeds").  *Id*. § II.C.1.  Each Settlement Class member's share will be calculated according to the formula A / B x C, where A represents the total fees paid by the Settlement Class member pursuant to his contract with LHDR,  B represents the aggregate total of all such fees paid by Settlement Class members, and C represents the Net LHDR Settlement Proceeds.  *Id.* § II.C.2.

If approved by the Court, Settlement Class representative Rosita Smith will receive a $5,000 enhancement award from the LHDR Settlement Trust.  *Id*. § II.D.7.  This award will compensate Plaintiff Smith for her time and effort and for the risk she undertook in prosecuting the case.

In addition, any Court-approved notice and claims administration costs, attorneys' fees, and litigation expenses will be deducted from the Settlement Trusts.  LHDR Settlement

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 5
CASE NO. 3:11−cv−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   Agreement § II.D.4–6.  Plaintiff's counsel estimate that the notice costs will be approximately

2   $51,930.12.  Marshall Decl. ¶ 22.

3           As for attorneys' fees, Plaintiff's counsel are applying for an award of $600,000, which

4   is thirty percent of the LHDR Settlement Trust.  An award of attorneys' fees will compensate

5   and reimburse Plaintiff's counsel for the work they have already performed in this case as well

6   as the work remaining to be performed in documenting the settlement, securing Court approval

7   of the settlement, making sure that the settlement is fairly administered and implemented, and

8   obtaining dismissal of the action.  *See* Marshall Decl. ¶ 6–7, 16–17; Scott Decl. ¶¶ 9–12.

9   Plaintiff's counsel also seek an award of approximately $19,177.65 in litigation expenses from

10  the LHDR Settlement Trust.  Plaintiff's counsel will provide the Court with the amount of

11  expenses actually incurred in litigating this action (excluding the costs of notice and claims

12  administration) when they apply for final approval.

13          The Net LHDR Settlement Proceeds, which are anticipated to be approximately

14  $1,329,000, will be distributed proportionately to Settlement Class members.  *See* LHDR

15  Settlement Agreement §§ II.C, II.D.3.  The amount of each member's share will be based on

16  the total fees that each proposed Settlement Class member paid pursuant to that member's

17  contract with LHDR.  *Id.* § II.C.2  Accordingly, a Settlement Class member who paid more

18  fees to LHDR will receive a proportionally larger settlement award than a person who paid

19  fewer fees to LHDR.  Assuming the Court grants the requested claims administration costs,

20  attorneys' fees, and litigation expenses, Plaintiff estimates that Settlement Class members will

21  receive nearly thirty percent of the total non-refunded fees they paid to LHDR.  *Id.*  For

22  example, Plaintiff Smith paid $3,795.51 in fees to LHDR.   Thus, her approximate share will

23  be $1,117.00.  On behalf of the Settlement Class, Plaintiff and her counsel will continue to

24  pursue additional funds from the non-settling Defendants through this litigation.  LHDR

25  Settlement Agreement § III.B.

26          In exchange for the benefits allowed under the settlement, Settlement Class members

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  who do not opt out will release every claim, right, cause of action, loss or liability whatsoever

2  that has been or could have been asserted in this action against the LHDR Defendants and

3  related entities and individuals regarding the LHDR Defendants' allegedly unlawful debt

4  adjusting activities.  LHDR Settlement Agreement § III.A.  The release of the LHDR

5  Defendants shall not release the claims of Plaintiff and Settlement Class members against

6  remaining Defendants Legal Services Support Group, LLC, JEM Group, Inc., Marshall Banks,

7  LLC, Joanne Garneau, Arthur Garneau, or any other person or entity.  *Id.* § III.B.

8          2.      The Marshall Banks Settlement Agreement

9          The Marshall Banks Settlement Agreement provides relief for a portion of the

10  Settlement Class that includes all Washington residents who, through the actions of Marshall

11  Banks, became enrolled in a debt settlement program with Legal Helpers Debt Resolution,

12  LLC and who did not execute a timely and valid exclusion request (the "Settlement Subclass").

13  Marshall Banks Settlement Agreement § II.A.  For the benefit of this Settlement Subclass,

14  Marshall Banks will pay $60,000 into the IOLTA account of The Scott Law Group in twelve

15  monthly installments (the "Marshall Banks Settlement Trust").  *Id.* § II.B.  Each Settlement

16  Subclass member will receive a proportional share of the funds remaining in the Marshall

17  Banks Settlement Trust after deducting any Court-awarded attorneys' fees and costs, notice

18  and claims administration costs, or other Court-approved expenses (the "Net Marshall Banks

19  Settlement Proceeds").  *Id.* § II.C.1.  Each Settlement Subclass member's share will be

20  calculated according to the formula A / B x C, where A represents the total fees Marshall

21  Banks received in relation to that Subclass member, B represents the aggregate total of all such

22  fees Marshall Banks received in relation to Settlement Subclass members, and C represents the

23  Net Marshall Banks Settlement Proceeds.  *Id.* § II.C.2.

24          Plaintiff's counsel are applying for an award of $18,000, which is thirty percent of the

25  Marshall Banks Settlement Trust.

26          The Net Marshall Banks Settlement Proceeds will be distributed proportionately to

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 7
CASE NO. 3:11−cv−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  Settlement Subclass members forty-five days after the final installment payment has been

2  made.  *See* Marshall Banks Settlement Agreement §§ II.C, II.D.3.  Similar to the LHDR

3  Settlement Agreement, the amount of each member's share will be based on the total fees that

4  Marshall Banks received in relation to each Settlement Subclass member.  *Id.* § II.C.2

5  Assuming the Court grants the requested claims administration costs, attorneys' fees, and

6  litigation expenses, Plaintiff estimates that Settlement Subclass members will receive

7  approximately seventy percent of the total fees that Marshall Banks received related to them.

8  *Id.*  For example, Marshall Banks received just over $2,000 in fees related to Plaintiff Smith.

9  Thus, her approximate share from the Marshall Banks Settlement Trust will be $1,400.  On

10  behalf of the Settlement Subclass, Plaintiff and her counsel will continue to pursue additional

11  funds from the non-settling Defendants through this litigation.  Marshall Banks Settlement

12  Agreement § III.B.

13         In exchange for the benefits allowed under the settlement, Settlement Subclass

14  members who do not opt out will release every claim, right, cause of action, loss or liability

15  whatsoever that has been or could have been asserted in this action against Marshall Banks and

16  related entities and individuals regarding Marshall Banks's allegedly unlawful debt adjusting

17  activities.  Marshall Banks Settlement Agreement § III.A.  The release of Marshall Banks shall

18  not release the claims of Plaintiff and Settlement Subclass members against the LHDR

19  Defendants, Legal Services Support Group, LLC, JEM Group, Inc., Joanne Garneau, Arthur

20  Garneau, or any other person or entity.  *Id.* § III.B.

21         3.    The Notice Program

22         If the Court grants preliminary approval, Plaintiff will ask the Court to approve a notice

23  program in which the claims administrator will issue notice forms directly to Settlement Class

24  and Settlement Subclass members that inform the members of the Settlements and their rights

25  under them.  Settlement Agreements § II.E.1.  Plaintiff anticipates that Settlement Class and

26  Subclass members will receive such notice directly through first-class mail and also by

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 8
CASE NO. 3:11−cv−05054−RJB

*TERRELL MARSHALL DAUDT & WILLIE PLLC*
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

electronic mail using the most recent contact information available. *See id.* Settlement

Subclass members will receive two notices; one notice will explain those members' rights and

obligations under the LHDR Settlement Agreement, and the other notice will explain those

members' rights and obligations under the Marshall Banks Settlement Agreement.

Once the claims administrator completes the mailing of notices to the Settlement Class

and Subclass, members will have thirty-five days from the date of initial mailing to submit a

written request to be excluded from or opt out of the Settlement Class or Subclass. Settlement

Agreements § II.G. Settlement Class and Subclass members will have forty-five days from the

date of the initial mailing to object to the Settlements. *Id.* § II.H. Once this period has passed,

assuming the Court has granted final approval, the claims administrator will calculate the

settlement awards for the LHDR Settlement Class members and issue checks to those

individuals. *Id.* ¶ II.D.3. The claims administrator will calculate the settlement awards for the

Settlement Subclass members and issue checks to those individuals forty-five days following

the final installment payment into the Marshall Banks Settlement Trust. It is unnecessary for

Settlement Class or Subclass members to submit claims in order to receive compensation. If

any of the issued checks remain uncashed after a period of 180 days, those funds will be

distributed to the Legal Foundation of Washington. Settlement Agreements § II.D.8. No funds

will revert to the LHDR Defendants or to Marshall Banks.

### III.  ARGUMENT AND AUTHORITY

**A.     Settlement and Class Action Approval Process**

As a matter of "express public policy," federal courts strongly favor and encourage

settlements, particularly in class actions and other complex matters, where the inherent costs,

delays, and risks of continued litigation might otherwise overwhelm any potential benefit the

class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

1992) (noting the "strong judicial policy that favors settlements, particularly where complex

class action litigation is concerned"); *see also* 4 Herbert B. Newberg & Alba Conte, *Newberg*

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 9
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

*on Class Actions* ("Newberg") § 11.41 (4th ed. 2002) (citing cases). Here, the proposed Settlement Agreements are the best vehicle for Settlement Class members to receive the relief to which they are entitled in a prompt and efficient manner.

The Manual for Complex Litigation (Fourth) (2004) § 21.63 ("MCL 4th") describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *Newberg* § 11.25.

With this motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreements. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.* The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the Parties to the agreement," and will reverse only upon strong showing of abuse of discretion) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)).

The Court's grant of preliminary approval will allow all Settlement Class and Subclass members to receive notice of the proposed Settlement Agreements' terms and the date and time

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 10
CASE NO. 3:11−CV−05054−RJB

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

of the "formal fairness hearing," or Final Approval Hearing, at which Settlement Class and Subclass members may be heard regarding the Settlement Agreements, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement Agreements may be presented. *See* MCL 4th §§ 13.14, 21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id.* at § 13.14.

**B.      The Criteria for Settlement Approval Are Satisfied**

While the threshold for preliminary approval requires only that the settlement fall within a "range of reasonableness" (*see supra*), a preliminary analysis of the final approval criteria shows that Plaintiff exceeds that showing. At the final approval stage, a proposed settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at 1276 (quoting *Officers for Justice*, 688 F.2d at 625). For the reasons set forth below, the proposed Settlements are the product of serious and informed arms-length negotiations and fall well within a "range of reasonableness" sufficient to warrant their preliminary approval. *See Orvis v. Spokane County*, --- F.R.D. ----, 2012 WL 966935, at *6 (E.D. Wash. Mar. 21, 2012).

      1.      The Settlement Agreements Are the Product of Serious, Informed, and Arm's-Length Negotiations

The Court's role is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted). "A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." *Hughes v. Microsoft Corp.,* No. C98-1646C, C93-0178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001). *See also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 542–43 (W.D. Wash. 2009) (approving

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 11
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.350.3528
www.tmdwlaw.com

settlement "reached after good faith, arms-length negotiations"); *In re Phenylpropanolamine (PPA) Prods. Liability Litig.*, 227 F.R.D. 553, 567 (W.D. Wash. 2004) (approving settlement "entered into in good faith, following arms-length and non-collusive negotiations").

The Settlement Agreements are the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this case. Marshall Decl. ¶¶ 2–5. Plaintiff's counsel are particularly experienced in the litigation, certification, and settlement of debt adjusting cases similar to this case. *Id.* ¶ 10; Scott Decl. ¶¶ 3–5. In negotiating these Settlement Agreements, counsel had the benefit of years of experience litigating class actions and a familiarity with the facts of this case. *Id.* Moreover, Plaintiff and the LHDR Defendants engaged in an extensive and contested mediation before an experienced former federal magistrate judge. Marshall Decl. ¶ 2.

As discussed in Section II.B above, counsel spent a considerable amount of time engaging in discovery, reviewing documents, interviewing witnesses, and analyzing legal issues related to the lawsuit's claims. *See Hanlon*, 150 F.3d at 1027 (no basis to disturb the settlement, in the absence of any evidence suggesting that the settlement was negotiated in haste or in the absence of information). Plaintiff and her counsel support the Settlements as fair, reasonable, adequate and in the best interests of the Settlement Class and Settlement Subclass. Marshall Decl. ¶ 10; Scott Decl. ¶ 15.

2.   The Settlements Provide Substantial Relief for Settlement Class and Subclass Members and Treat All Settlement Class and Subclass Members Fairly

The LHDR Settlement Agreement provides relief for all Settlement Class members who paid fees pursuant to an agreement with LHDR. The LHDR Settlement Agreement requires the LHDR Defendants to pay, and the LHDR Defendants have paid, $2 million into the LHDR Settlement Trust to fund the settlement. The Marshall Banks Settlement Agreement provides additional relief for all Settlement Class members who through the actions of Marshall Banks became enrolled in a debt settlement program with LHDR. Settlement Class members who became enrolled in a debt settlement program with LHDR through the actions of a different

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 12
CASE NO. 3:11−CV−05054−RJB

1    front-end provider do not release their claims against those other providers.

2            The funds distributed to the Settlement Class and Settlement Subclass will be allocated

3    in a manner that is fair and reasonable.  Each member's share will be based on the fees the

4    member paid pursuant to his or her contract with LHDR and, if applicable, the fees Marshall

5    Banks received relating to the member.  LHDR Settlement Agreement § II.C.2, D.3; Marshall

6    Banks Settlement Agreement § II.C.2, D.3.  Plaintiff estimates that each Settlement Class

7    member will receive nearly thirty percent of the total fees the Settlement Class member paid

8    pursuant to an agreement with LHDR.  Settlement Subclass members will receive

9    approximately seventy percent of the total fees received by Marshall Banks.  These percentages

10   are well in line with settlements approved by other courts.  *See, e.g., Rodriguez v. W. Publ'g*

11   *Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) (approving settlement amounting to 30 percent of the

12   damages estimated by the class expert; court noted that even if the plaintiffs were entitled to

13   treble damages that settlement would be approximately 10 percent of the estimated damages);

14   *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement

15   estimated to be worth between 1/6 to 1/2 the plaintiffs' estimated loss); *In re Omnivision Tech.,*

16   *Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement amounting to nine

17   percent of estimated total damages).  This amount is especially reasonable in light of the fact

18   that the LHDR Defendants retained only thirteen percent of the total fees paid pursuant to the

19   agreements.  *See* Marshall Decl. ¶ 6 (LHDR Defendants retained only $578,000 of the $4.515

20   million fees paid by consumers).  On behalf of the Settlement Class, Plaintiff and her counsel

21   will continue to pursue additional funds from the non-settling Defendants, who retained the

22   majority (87 percent) of the fees at issue in this case.

23           The manner in which settlement funds will be allocated is simple and efficient.

24   Settlement Class and Subclass members who do not opt out will automatically receive a check

25   for the share of the LHDR and Marshall Banks Settlement Trusts to which they are entitled;

26   they do not need to file a claim form.  Settlement Agreements § II.D.3.  The Settlement Trusts

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 13
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    are non-reversionary, any the funds for any checks that remain uncashed after 180 days will be

2    donated as *cy pres* monies to the Legal Foundation of Washington.  *Id.* § II.D.8.

3        3.    The Settlement Agreements Are Fair and Reasonable in Light of the Alleged
              Claims and Defenses

4        Entering into mediation, Plaintiff and Plaintiff's counsel were confident in the strength

5    of their case, but also pragmatic in their awareness of the risks inherent to litigation and the

6    various defenses available to Defendants.  The reality that Settlement Class members could end

7    up recovering only a fraction of the Settlement Agreement benefits or losing the case at or

8    before trial was significant enough to convince Plaintiff and Plaintiff's counsel that the

9    Settlement Agreements reached with the LHDR Defendants and Marshall Banks outweigh the

10   gamble of continued litigation against them.

11       Plaintiff faced the risk of dismissal at a very early stage in this litigation.  This case

12   turns on competing interpretations of, among other things, a provision of the DAA known as

13   the "lawyer exemption."  *See* RCW 18.28.010(2)(a).  Defendants maintain that the DAA does

14   not apply to them because the statute exempts lawyers.  Plaintiff maintains that RCW

15   18.28.010(2)(a) is found in the "Definitions" section of the DAA and serves as a qualifier to the

16   statutory definition of  "Debt Adjuster."  The provision does not set forth a categorical

17   exemption from the DAA act.  Rather, the provision's plain language and statutory context

18   make evident that this subsection operates as a limited exclusion from the term "Debt

19   Adjuster," as elsewhere employed in that Act.  Although Plaintiff is confident her interpretation

20   of the DAA is correct, her damages could be substantially reduced, or eliminated altogether, if

21   the Court of Appeals were to hold otherwise.

22       Another risk Plaintiff faced going forward is that the Court of Appeals would reverse

23   this Court's ruling that the arbitration provision in the LHDR agreement is not enforceable.  If

24   this were to occur, LHDR would argue that Settlement Class members' claims should be sent to

25   individual arbitrations.

26       Finally, there is a substantial risk of losing inherent in any jury trial.  Even if Plaintiff

     did prevail, any recovery could be delayed for years by an appeal.  The Settlement Agreements

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 14
CASE NO. 3:11−cv−05054−RJB

1  provide substantial relief to Settlement Class and Subclass members without further delay and
2  permits them to pursue additional compensation through their claims against the non-settling
3  Defendants and any other entity that caused them to be enrolled in an LHDR debt settlement
4  program.

5      4.      The Class Representative Enhancement Award Is Reasonable

6      Enhancement awards for class representatives, like the one for $5,000 requested here,
7  are appropriate.  Unlike unnamed Settlement Class members, who will enjoy the benefits of the
8  representatives' efforts without taking any personal action, Rosita Smith exposed herself to
9  Defendants' investigation, committed herself to all the rigors of litigation in the event the case
10  did not settle, and subjected herself to all the obligations of named parties.  Small incentive
11  awards, which serve as premiums in addition to any claims-based recovery from the settlement,
12  promote the public policy of encouraging individuals to undertake the responsibility of
13  representative lawsuits.  *See Grays Harbor Adventist Christian Sch. v. Carrier Corp.,* No. 05-
14  05437 RBL, 2008 WL 1901988, at *7 (W.D. Wash. Apr. 24, 2008); *In re Mego Fin. Corp.*
15  *Secs. Litig.,* 213 F.3d 454, 463 (9th Cir. 2000); *see also* MCL 4th § 21.62 n. 971 (incentive
16  awards may be "merited for time spent meeting with class members, monitoring cases, or
17  responding to discovery").

18      5.      The Requested Attorneys' Fees and Costs Are Fair and Reasonable

19      Plaintiff's counsel seek attorneys' fees awards of $600,000 from the LHDR Settlement
20  Trust and $18,000 from the Marshall Banks Settlement Trust.  Marshall Decl. ¶ 16.  These
21  awards amount, respectively, to thirty percent of the total $2 million LHDR Settlement Trust
22  and thirty percent of the total $60,000 Marshall Banks Settlement Trust.  Plaintiff's counsel
23  also seek reimbursement for out-of-pocket expenses associated with this case and costs to
24  prepare, mail, and administer the proposed class notice.

25      Plaintiff's counsel's fees and costs request is reasonable under the circumstances of this
26  case.  Through July 11, 2012, Plaintiff's counsel have incurred $545,917 in fees litigating this
   case and $19,177.65 in out-of-pocket costs.  Marshall Decl. ¶ 16.  Scott Decl. ¶ 12.  Plaintiff's
   counsel expect to incur an additional $51,930.12 to prepare, mail, and administer the notice

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 15
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

process.  Marshall Decl. ¶ 22.  In light of the excellent value of the settlement, Plaintiff's counsel's knowledge and experience, and the fact that Plaintiff will still pursue additional Class-wide damages against the non-settling Defendants, the attorneys' fees and costs to be sought are exceedingly reasonable.  Indeed, Plaintiff's counsel have litigated the claims against the LHDR Defendants and Marshall Banks efficiently and achieved settlement quickly without subjecting their clients and the Settlement Class and Subclass to the uncertainties and risks of appeal, class certification, and trial.

Prior to final approval, Plaintiff's Counsel will file a separate motion for award of attorneys' fees and costs, addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.

## C.    Provisional Certification of the Class Is Appropriate

For settlement purposes, Plaintiff respectfully requests that the Court provisionally certify the Settlement Class defined in Section II.C, *supra*.  Provisional certification of a class for settlement purposes permits notice of the proposed settlement to issue to the class to inform class members of the existence and terms of the proposed settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time and place of the formal fairness hearing.  *See* MCL 4th §§ 21.632, 21.633.  The LHDR Defendants waive their challenges to class certification solely for purposes of this Settlement Agreement.  For the reasons set forth below, provisional certification is appropriate under Rule 23(a) and (b)(3).

The numerosity requirement of Rule 23(a) is satisfied.  Plaintiff estimates that the Settlement Class consists of approximately 1,278 Washington consumers, and joinder of all such persons is impracticable.  Marshall Decl., ¶ 18; *see also* Fed. R. Civ. P. 23(a)(1); *see also Rodriguez v. Carlson*, 166 F.R.D. 465, 471 (E.D. Wash. 1996).  The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on Defendants' practice of charging fees in excess of fees permitted by the DAA.  *See* Fed. R. Civ. P. 23(a)(2).  The typicality requirement is satisfied because Plaintiff's claims, which are based on fees charged pursuant to uniform contracts executed by all members of the

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 16
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Settlement Class, are "reasonably coextensive with those of the absent class members." *See*

Fed. R. Civ. P. 23(a)(3); *Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412, 415 (W.D. Wash. 2003).

The adequacy of representation requirement is satisfied because Plaintiff's interests are

coextensive with, and not antagonistic to, the interests of the Settlement Class. *See Fed. R. Civ.*

*P.* 23(a)(4); *see also Hansen*, 213 F.R.D. at 415–16. Further, Plaintiff is represented by

qualified and competent counsel who have extensive experience and expertise in prosecuting

complex class actions. *See generally* Marshall Decl. ¶¶ 10–15; Scott Decl. ¶¶ 2–8.

The predominance requirement of Rule 23(b)(3) is satisfied because common questions

present a significant aspect of the case and can be resolved for all Settlement Class members in

a single adjudication. *See* Fed. R. Civ. P. 23(b)(3); *see also Local Joint Exec. Bd. of*

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

Because the claims are being certified for purposes of settlement, there are no issues

with manageability, and resolution of thousands of claims in one action is far superior to

individual lawsuits and promotes consistency and efficiency of adjudication. *See* Fed. R. Civ.

P. 23(b)(3); *see also Connor v. Automated Accounts, Inc.*, 202 F.R.D. 265, 271-72 (E.D. Wash.

2001). For these reasons, certification of the Settlement Class for purposes of settlement is

appropriate.

**D.      Provisional Certification of the Subclass Is Appropriate**

Plaintiff further requests that the Court provisionally certify the Settlement Subclass.

Rule 23(c)(5) provides: "When appropriate, a class may be divided into subclasses that are each

treated as a class under this rule." Fed. R. Civ. P. 23(c)(5). Generally, each subclass must

independently satisfy each of the Rule 23 requirements. *See* 1 William B. Rubenstein,

Newberg on Class Actions, § 3:16 (5th ed. June 2012). "However, if the subclass members are

also members of the larger, already certified class, courts have held that the subclass may not

be required to satisfy independently the numerosity requirement." *See id.*

Here, the Settlement Subclass satisfies all of Rule 23's requirements. All proposed

Settlement Subclass members also are members of the larger Settlement Class. Therefore, the

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 17
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

relaxed numerosity standard applies. *See id.* Even without applying the relaxed standard, the numerosity requirement is satisfied because there are twenty-three proposed class members and joinder is impracticable. *See Rosario v. Cook Cnty.*, 101 F.R.D. 659, 662 (N.D. Ill. 1983) (as few as 20 class members can satisfy the requisite numerosity). The commonality and typicality requirements also are satisfied. There are numerous questions of law and fact common to the Settlement Subclass that center on Defendants' practice of charging fees in excess of fees permitted by the DAA (*see* Fed. R. Civ. P. 23(a)(2)). Plaintiff's claims against Marshall Banks, which are based on the fact that Marshall Banks received unlawfully excessive fees for causing Plaintiff and other Settlement Subclass members to enroll in LHDR's debt adjusting program, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412, 415 (W.D. Wash. 2003). As for adequacy, Plaintiff is a member of both the Settlement Class and the Settlement Subclass. Her interests are coextensive with, and not antagonistic to, the interests of the Settlement Class and Settlement Subclass. *See* Fed. R. Civ. P. 23(a)(4); *see also Hansen*, 213 F.R.D. at 415–16. As with the Settlement Class, her counsel is adequate and the predominance and superiority requirements are satisfied. *See* Section III.D, *supra*.

For these reasons, certification of the Settlement Subclass for purposes of settlement is appropriate

## E.    The Proposed Notice Program Is Constitutionally Sound

"To protect their rights, the Court must provide class members with the best notice practicable regarding the proposed settlement. Fed. R. Civ. P. 23(c)(2).[1] The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

---

[1] *See also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best notice practicable" under the circumstances with description of the litigation and explanation of opt-out rights satisfies due process); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (holding "[w]e do not believe that *Shutts* changes the traditional standard for class notice from 'best practicable' to 'actually received' notice").

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 18
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Settlement Class members can be reasonably identified through LHDR's own records, which contain information on all consumers who entered into agreements with LHDR, including each person's last known mailing address, email address (where available), and phone number.  Marshall Decl. ¶¶ 18–19.  Settlement Subclass members can be similarly identified from Marshall Banks's records.  *See id.*  Plaintiff proposes sending notice in the form attached as Exhibit A to the Settlement Agreements directly via first-class mail and/or email to all proposed Settlement Class and Subclass members.  *See* Settlement Agreements § II.E.  This approach will ensure that direct notice reaches as many Settlement Class and Subclass members as possible.  Settlement Subclass members will receive two notices; one notice will describe their rights with respect to the  LHDR Settlement Agreement and the other will describe their rights with respect to the Marshall Banks Settlement Agreement.  *See* Settlement Agreements, Ex. A.

The language of both proposed notices is plain and easily understood, providing neutral and objective information about the nature of the Settlements.  The notice includes the definition of the Settlement Class and Settlement Subclass, a statement of each Settlement Class and Subclass member's rights (including the right to opt-out of the Settlement Class or Settlement Subclass or object to the Settlements), a statement of the consequences of remaining in the Settlement Class or Settlement Subclass, an explanation of how Settlement Class or Settlement Subclass members can exclude themselves from the respective Classes or object to the Settlements, and methods for contacting Plaintiff's counsel and obtaining more information.  *See id.*

Plaintiff submits that the notice program outlined in the Settlement Agreements is the best practicable notice under the circumstances of this case, and will be highly effective.

**E.**     **Scheduling a Final Approval Hearing Is Appropriate**

The last step in the settlement approval process is a Final Approval Hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation.  Proponents of the Settlement Agreements may explain the terms and conditions of the

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 19
CASE NO. 3:11−cv−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Settlement Agreements, and offer argument in support of final approval.  The Court will
determine after the Final Approval Hearing whether the Settlement Agreements should be
approved, and whether to enter a final order and judgment under Rule 23(e).  Plaintiff requests
that the Court set a date for a hearing on final approval at the Court's convenience, but no
earlier than November 12, 2012.

## IV.  CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court: (1) grant
preliminary approval of the proposed Settlement Agreements; (2) provisionally certify the
proposed Settlement Class and Settlement Subclass and appoint Rosita Smith Class
Representative and Subclass Representative; (3) approve the notice plan and forms of
settlement notice and order provision of such notice; (4) appoint The Scott Law Group P.S.,
and Terrell Marshall  Daudt & Willie PLLC as Class Counsel; (5) appoint The Scott Law
Group P.S., to serve as the Claims Administrator; and (6) schedule a formal fairness hearing on
final settlement approval at the Court's convenience but no earlier than November 12, 2012.

DATED this 25th day of July, 2012.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:  /s/ Toby J. Marshall, WSBA #32726
    Beth E. Terrell, WSBA #26759
    Email:  bterrell@tmdwlaw.com
    Toby J. Marshall, WSBA #32726
    Email:  tmarshall@tmdwlaw.com
    Jennifer Rust Murray, WSBA #36983
    Email:  jmurray@tmdwlaw.com
    936 North 34th Street, Suite 400
    Seattle, Washington  98103-8869
    Telephone:  206.816.6603
    Facsimile:   206.350.3528

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 20
CASE NO. 3:11−cv−05054−RJB

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Darrell W. Scott, WSBA #20241
Email: scottgroup@mac.com
Matthew J. Zuchetto, WSBA #33404
Email:  matthewzuchetto@mac.com
SCOTT LAW GROUP
926 W Sprague Avenue, Suite 583
Spokane, Washington 99201
Telephone:  509.455.3966

*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

1

2      I, Toby J. Marshall, hereby certify that on July 25, 2012, I electronically filed the

3  foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4  such filing to the following:

5              Jerry Kindinger, WSBA #5231
6              Email:  kindinger@ryanlaw.com
               Bryan C. Graff, WSBA #38553
7              Email:  graff@ryanlaw.com
               RYAN, SWANSON & CLEVELAND, PLLC
8              1201 Third Avenue, Suite 3400
               Seattle, Washington  98101-3034
9              Telephone:  206.464.4224

10
               *Attorneys for Defendants Legal Helpers Debt Resolution, LLC, Jason and
11             Jane Doe Searns, Thomas G. and Jane Doe Macey, Jeffrey and Jane
               Doe Aleman, and Jeffrey and Jane Doe Hyslip*
12

13             Richard Epstein, *Admitted Pro Hac Vice*
               Email: richard.epstein@gmlaw.com
14             Rebecca Bratter*, Admitted Pro Hac Vice*
               Email: rebecca.bratter@gmlaw.com
15             GREENSPOON MARDER PA
               200 East Broward Blvd., Suite 1500
16             Ft. Lauderdale, Florida  33301
               Telephone:  954.491.1190
17

18             *Attorneys for Defendants Legal Services Support Group, LLC, JEM Group Inc.,
               and Joanne and Arthur Garneau*
19

20             Todd Nunn
               Email:  todd.nunn@klgates.com
21             K&L GATES LLP
               925 Fourth Avenue, Suite 2900
22             Seattle, Washington  98104-1158
               Telephone: 206.623.7580
23

24

25

26

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 22
CASE NO. 3:11−cv−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1       Whitney J. Baran
    Email:  whitney.baran@klgates.com
2       K&L GATES LLP
    618 West Riverside Avenue, Suite 300
3       Spokane, Washington  99201-0602
    Telephone: 509.624.2100
4

5       *Attorneys for Defendant Marshall Banks, LLC*

6     DATED this 25th day of July, 2012.

7                  TERRELL MARSHALL DAUDT & WILLIE PLLC

8                 By: /s/ Toby J. Marshall, WSBA #32726
9                   Toby J. Marshall, WSBA #32726
                Email:  tmarshall@tmdwlaw.com
10                  936 North 34th Street, Suite 400
                Seattle, Washington  98103-8869
11                  Telephone:  206.816.6603

12                *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 23
CASE No. 3:11−CV−05054−RJB

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com