THE HONORABLE ROBERT J. BRYAN

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON

8   ROSITA H. SMITH, individually and on behalf
    of all similarly situated Washington State
9   Residents

10                              Plaintiff,

11          v.

12  LEGAL HELPERS DEBT RESOLUTION,
    LLC, a Nevada limited liability company;
13  LEGAL SERVICES SUPPORT GROUP, LLC,
    a Nevada corporation; JEM GROUP, INC., a
14  Nevada corporation; MARSHALL BANKS,
    LLC, a California company; JOANNE
15  GARNEAU, individually and on behalf of the
    marital community of JOANNE GARNEAU
16  and ARTHUR GARNEAU; JASON SEARNS,
17  individually and on behalf of the marital
    community of JASON SEARNS and JANE
18  DOE SEARNS; THOMAS G. MACEY,
    individually and on behalf of the marital
19  community of THOMAS G. MACEY and
20  JANE DOE MACEY; and JEFFREY
21  ALEMAN, individually and on behalf of the
    marital community of JEFFREY ALEMAN and
22  JANE DOE ALEMAN; JEFFREY HYSLIP,
    individually and on behalf of the marital
23  community of JEFFREY HYSLIP and JANE
24  DOE HYSLIP; and JOHN AND JANE DOES
    1-25,
25
26                              Defendants.

NO.  3:11−cv−05054−RJB

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**Noted for Consideration:  09/06/2013**

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 3:11−cv−05054−RJB

**Terrell Marshall Daudt & Willie PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# TABLE OF CONTENTS

Page No.

I.  INTRODUCTION .................................................................................1

II.  STATEMENT OF THE FACTS .........................................................1

    A.  Relevant Factual Background...................................................1

    B.  Plaintiff Thoroughly Investigated the Claims of the Proposed Class...................3

    C.  The Proposed Settlement Agreement .......................................4

        1.  The Settlement Class ....................................................5

        2.  Settlement Relief ..........................................................5

        3.  The Notice Program .....................................................7

III.  ARGUMENT AND AUTHORITY .....................................................8

    A.  Settlement and Class Action Approval Process ......................8

    B.  The Criteria for Settlement Approval Are Satisfied...............9

        1.  The Settlement Agreement Is the Product of Serious, Informed, and Arm's-Length Negotiations ...............10

        2.  The Settlement Provides Substantial Relief for Settlement Class Members and Treats All Settlement Class Members Fairly....................................................11

        3.  The Settlement Agreement Is Fair and Reasonable in Light of the Alleged Claims and Defenses .......................12

        4.  The Class Representative Enhancement Award Is Reasonable .............13

        5.  The Northwest Justice Project is an Appropriate *Cy Pres* Beneficiary ...................................................15

        6.  The Requested Attorneys' Fees and Costs Are Fair and Reasonable...............................................................16

    C.  Provisional Certification of the Class Is Appropriate...........16

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - i
CASE NO. 3:11−CV−05054-RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.350.3528
www.tmdwlaw.com

1

D.      The Proposed Notice Program Is Constitutionally Sound.....................18

E.      Scheduling a Final Approval Hearing Is Appropriate........................19

III.    CONCLUSION ...........................................................................................19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT -  ii
CASE NO. 3:11−CV−05054−RJB

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ..................................................................8, 9, 10

*Connor v. Automated Accounts, Inc.*,
202 F.R.D. 265 (E.D. Wash. 2001) ...............................................................17

*Dennis v. Kellogg Co.*,
697 F.3d 858 (9th Cir. 2012) .........................................................................15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..................................................................10, 11

*Hansen v. Ticket Track, Inc.*,
213 F.R.D. 412 (W.D. Wash. 2003) ...............................................................17

*Hughes v. Microsoft Corp.*,
No. C98-1646C, C93-0178C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001)..........10

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .........................................................................11

*In re Omnivision Tech., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................................12

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
227 F.R.D. 553 (W.D. Wash. 2004) ...............................................................10

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) .......................................................................17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) .....................................................................................18

*Nachshin v. AOL, LLC*,
663 F.3d 1034 (9th Cir. 2011) .......................................................................15

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ......................................................................9, 10

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - iii
CASE NO. 3:11−cv−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

*Orvis v. Spokane County*,
  281 F.R.D. 469 (E.D. Wash. 2012) .......................................................10

*Pelletz v. Weyerhaeuser Co.*,
  255 F.R.D. 537 (W.D. Wash. 2009) ..............................................10, 15

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................18

*Radcliffe v. Experian Info. Solutions*,
  715 F.3d 1157 (9th Cir. 2013) ............................................................14

*Rodriguez v. Carlson*,
  166 F.R.D. 465 (E.D. Wash. 1996) .....................................................17

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .......................................................11, 13

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) ..............................................................18

## STATE CASES

*Carlsen v. Global Client Solutions, LLC*,
  171 Wn.2d 486, 256 P.3d 321 (2011) ............................................1, 15

## STATE STATUTES

RCW 18.28.010 .........................................................................1, 2, 12

RCW 18.28.080 ....................................................................................1

RCW 19.86.020 ..................................................................................15

RCW 19.86.920 ..................................................................................15

## FEDERAL RULES

Fed. R. Civ. P. 23(a)(1) .......................................................................17

Fed. R. Civ. P. 23(a)(2) .......................................................................17

Fed. R. Civ. P. 23(a)(3) .......................................................................17

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT -  iv
CASE NO. 3:11−cv−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Fed. R. Civ. P. 23(a)(4) ...................................................................................17

Fed. R. Civ. P. 23(b)(3) ...................................................................................17

Fed. R. Civ. P. 23(c)(2) ...................................................................................17

**OTHER AUTHORITIES**

4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11:25 (4th ed. 2002)...........9

4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11:41 (4th ed. 2002)...........8

Manual for Complex Litigation (Fourth) § 13.14 (2004)........................................................9

Manual for Complex Litigation (Fourth) § 21.62 (2004)......................................................13

Manual for Complex Litigation (Fourth) § 21.63 (2004)........................................................8

Manual for Complex Litigation (Fourth) § 21.632 (2004)................................................9, 16

Manual for Complex Litigation (Fourth) § 21.633 (2004).....................................................16

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - v
CASE NO. 3:11−CV−05054−RJB

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# I.  INTRODUCTION

Plaintiff Rosita Smith has reached a settlement with Defendants JEM Group, Inc. and Joanne Garneau, individually and on behalf of the marital community of Joanne Garneau and Arthur Garneau (collectively, the "JEM Defendants").  Plaintiff therefore respectfully moves the Court for preliminary approval of the Settlement.  For the reasons set forth in this memorandum and the supporting documents, the Settlement is fair and reasonable and serves the best interests of the settlement class members.  Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement, including the settlement payments to the class and the fees and costs payments to Plaintiff's counsel; (2) provisionally certify the proposed settlement class; (3) appoint as class counsel the law firms of The Scott Law Group, P.S., and Terrell Marshall Daudt & Willie PLLC; (4) appoint Rosita Smith as representative of the class; (5) approve the proposed notice plan and class notice form; (6) appoint The Scott Law Group, P.S., to serve as the claims administrator; and (7) schedule the final fairness hearing and related dates as proposed by the parties.

# II.  STATEMENT OF THE FACTS

## A.      Relevant Factual Background

This case involves the for-profit "debt adjusting" industry.  Debt adjusting is the activity of managing, counseling, settling, adjusting, prorating, or liquidating the indebtedness of a debtor.  RCW 18.28.010(1).  Washington's Debt Adjusting Act ("DAA") limits the fees that a debt adjuster may charge for debt adjusting services to (1) an initial charge of no more than $25, which must be considered part of the total fee; (2) a maximum of 15% of any one payment made by a debtor to a creditor; and (3) a maximum total fee of 15% of the debt being adjusted.  RCW 18.28.080.  Companies that attempt to negotiate the settlement of credit card debts on behalf of consumers are among the enterprises subject to the DAA.  *See Carlsen v. Global Client Solutions, LLC*, 171 Wn.2d 486, 256 P.3d 321 (2011).

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 1
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

The DAA does not apply to attorneys when they are providing debt settlement services "solely incidental to the practice of their profession." RCW 18.28.010(2)(a). Plaintiff alleges that in order to avoid the statute's fee limits, long-established debt settlement companies have associated themselves with attorneys who lend their names to the debt adjusting activities of the debt adjusting companies. Plaintiff alleges these entities construct and maintain the façade that debt adjusting services are being offered and performed by the attorney. Plaintiff alleges Defendants have engaged in just such a scheme and that it constitutes a *per se* violation of Washington's Consumer Protection Act.

On January 19, 2011, Plaintiff Rosita Smith filed a Class Action Complaint in this Court against Defendants Legal Helpers Debt Resolution, LLC ("LHDR"), Marshall Banks, LLC ("Marshall Banks"), and JEM Group, Inc. ("JEM"). *See generally* Class Action Complaint (Dkt. No. 1). Plaintiff claimed Defendants' practices were in violation of Washington law and sought injunctive relief, restitution, and damages on behalf of herself and all similarly situated Washington residents who entered into an attorney retainer agreement with LHDR and/or a debt settlement agreement with Marshall Banks involving implementation, management, or maintenance of a debt settlement program by JEM. *See id.* Plaintiff brought the action as a class action pursuant to Fed. R. Civ. P. 23. *Id.*

Defendants moved to dismiss the lawsuit asserting that attorneys are exempt from the DAA and that the suit was subject to mandatory arbitration. The Court denied both motions. Dkt. Nos. 95, 96. Defendants appealed. Plaintiff subsequently moved to amend her complaint to join as defendants Jason Searns, Thomas Macey, Jeffrey Aleman, and Jeffrey Hyslip (the principals behind LHDR), LSSG, and Joanne Garneau (the owner and manager of JEM).

Shortly after Defendants filed for appellate review, the parties agreed to stay the appeals and certain deadlines in the underlying case pending mediation. *See* Dkt. Nos. 124–127. Plaintiff, the LHDR Defendants, and JEM engaged in a full-day mediation with the assistance of a retired judge, the Honorable William J. Cahill. *Id.* Although a settlement was not reached

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 2
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   that day, the LHDR Defendants continued to discuss potential settlement with Plaintiff.

2   Declaration of Toby J. Marshall ("Marshall Decl.") ¶¶ 2–4.[1]  JEM, however, pursued its appeal,

3   which was argued and submitted for consideration on March 7, 2013.  *Id.* ¶ 3.

4          JEM again approached Plaintiff's counsel about the possibility of settlement in July

5   2013.  Marshall Decl. ¶ 4.  JEM and Plaintiff's counsel negotiated over several weeks through

6   an experienced mediator, the Honorable Terry Lukens (Ret.).  *Id.*  The negotiations between the

7   parties were adversarial, non-collusive, and at arm's length.  *Id.*  JEM served as the "back-end"

8   debt adjusting company for approximately 225 proposed class members enrolled in the LHDR

9   debt settlement program.  Plaintiff required JEM to produce, and JEM did produce, information

10   regarding the amount of fees JEM received in relation to these 225 class members.  The

11   discussions culminated in a Class Action Settlement Agreement and Release (the "JEM

12   Settlement Agreement") between Plaintiff and the JEM Defendants.  *See* Marshall Decl.,

13   Ex. 1.[2]

14          The JEM settlement does not affect the rights of Plaintiff and the proposed class to

15   pursue their claims against Defendant Legal Services Support Group, LLC and other entities

16   and individuals separate from the JEM Defendants who may have caused harm to the Plaintiff

17   and proposed class.

18   **B.**     **Plaintiff Thoroughly Investigated the Claims of the Proposed Class**

19          Plaintiff's counsel have extensive experience investigating, litigating, certifying, and

20   settling class action cases like this one.  *See generally* Zuchetto Decl. ¶¶ 2–8; Marshall Decl.

21   ¶¶ 9–14.  Moreover, Plaintiff's counsel have a thorough understanding of the debt-adjusting

22   industry and the legal claims that have arisen due to unlawful activity within that industry.  *See*

23

24   ─────────────────────
[1] Plaintiff settled her claims against LHDR and Defendant Marshall Banks, and the Court certified the LHDR and

25   Marshall Banks Class and Subclass and granted final approval of the settlements on December 7, 2012.  *See* Dkt. No. 169.

26   [2] Plaintiff will supplement the record with the signature page for Defendant JEM Group, Inc. upon receipt and expect to do so the week of August 19, 2013.  *See* Marshall Decl. ¶ 4.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 3
CASE NO. 3:11−CV−05054-RJB

1    *id.*  Indeed, Plaintiff's counsel have been actively pursuing several similar cases against other
2    entities engaged in debt adjusting.  *See* Zuchetto Decl. ¶¶ 3–8.

3        Before filing the action in January 2011, Plaintiff's counsel spent several months
4    investigating the factual bases of Ms. Smith's claims against Defendants, researching related
5    legal issues, and preparing the complaint.  Zuchetto Decl. ¶ 9–11.  After the complaint was
6    filed, Plaintiff's counsel conducted substantial discovery, requesting and receiving thousands of
7    pages of documents from Defendants, including their operating agreements, agreements with
8    consumers, training materials, and computer software manuals.  Marshall Decl. ¶ 6.
9    Defendants also produced information regarding the number of Washington consumers to
10   whom they have provided debt adjusting services and the amount of fees that these consumers
11   paid.  *See id.*  During settlement discussions, Defendants supplemented this information.  *Id.*
12   These documents permitted Plaintiff's counsel to further analyze the factual bases for their
13   claims and to calculate class-wide damages.  Among other things, Plaintiff's counsel learned
14   that Washington consumers paid Defendants several million dollars in debt adjusting fees.  *Id.*
15   JEM received approximately $403,855 of those illegal fees.  *Id.*

16       Plaintiff's counsel also spent a considerable amount of time interviewing dozens of
17   Washington consumers who had signed agreements with LHDR.  Marshall Decl. ¶ 7; Zuchetto
18   Decl. ¶ 12.  In all, Plaintiff's counsel estimate they interviewed dozens of Washington residents
19   enrolled in Defendants' debt adjusting program.  *Id.* ¶ 7; Zuchetto Decl. ¶ 12.  These interviews
20   proved very helpful in allowing counsel to assess the strengths and weaknesses of the class
21   claims.  *Id.*

22   **C.    The Proposed Settlement Agreement**

23       The Settlements' details are contained in the JEM Settlement Agreement.  *See* Marshall
24   Decl., Ex. 1.  For purposes of preliminary approval, the following summarizes the Settlement
25   Agreement's terms.

26

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 4
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1.   The Settlement Class

The proposed settlement class (the "Class" or "Class Members") includes:

> All Washington residents for whom JEM Group, Inc. agreed to provide debt adjusting services pursuant to JEM Group, Inc. Agreements or otherwise provided debt adjustment services to such residents between January 19, 2007 and the date of the Settlement Agreement.

The Class excludes those Washington residents who execute a timely and valid exclusion request. Settlement Agreement § II.A.

2.   Settlement Relief

Pursuant to the Settlement Agreement, the JEM Defendants will pay a total of $175,000 into the IOLTA account of The Scott Law Group P.S. (the "Settlement Trust"). Settlement Agreement § II.B. Each Settlement Class member will receive a proportional share of the funds remaining in the JEM Settlement Trust after deducting any Court-awarded attorneys' fees and costs, notice and claims administration costs, class representative incentive award amounts, or other Court-approved amounts (the "Net Settlement Proceeds"). *Id*. § II.C.1. Each Settlement Class member's share will be calculated according to the formula A / B x C, where A represents the total fees received by JEM from the Class Member, B represents the aggregate total of all such fees paid by the Settlement Class members, and C represents the Net Settlement Proceeds. *Id*. § II.C.2.

If approved by the Court, Settlement Class representative Rosita Smith will receive a $750 enhancement award from the JEM Settlement Trust. *Id*. § II.D.7. This award will compensate Plaintiff Smith for her time and effort and for the risk she undertook in prosecuting the case.

In addition, any Court-approved notice and claims administration costs, attorneys' fees, and litigation expenses will be deducted from the Settlement Trust. Settlement Agreement § II.D.4–6. Plaintiff's counsel estimate that the claims administration and notice costs will be approximately $5,093.22. Zuchetto Decl. 15.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 5
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

As for attorneys' fees, Plaintiff's counsel are applying for an award of $52,500, which is thirty percent of the JEM Settlement Trust.  An award of attorneys' fees will compensate and reimburse Plaintiff's counsel for the work they have already performed in this case as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, making sure that the settlement is fairly administered and implemented, and obtaining dismissal of the action.  *See* Marshall Decl. ¶¶ 6–7, 15–16; Zuchetto Decl. ¶¶ 16.  Plaintiff's counsel also seek an award of approximately $1,764.06 in litigation expenses from the JEM Settlement Trust.  *See* Marshall Decl. ¶ 16; Zuchetto Decl. ¶ 17.  Plaintiff's counsel will provide the Court with the amount of expenses actually incurred in litigating this action (excluding the costs of notice and claims administration) when they apply for final approval.

The Net JEM Settlement Proceeds, which are anticipated to be approximately $114,642.72, will be distributed proportionately to Settlement Class members.  *See* Settlement Agreement §§ II.C, II.D.3.  The amount of each member's share will be based on the total fees that each proposed Settlement Class member paid pursuant to that member's debt adjusting contract.  *Id*. § II.C.2  Accordingly, a Settlement Class member who paid more fees to JEM will receive a proportionally larger settlement award than a person who paid fewer fees to JEM.  Assuming the Court grants the requested claims administration costs, attorneys' fees, and litigation expenses, Plaintiff estimates that Settlement Class members will receive nearly thirty percent of the total non-refunded fees they paid to JEM.  *Id*.  For example, Plaintiff Smith paid $1,059.65 in fees to JEM.  *See* Marshall Decl. ¶ 8. Thus, her approximate share will be $315.  *Id*.  On behalf of the Settlement Class, Plaintiff and her counsel will continue to pursue additional funds from the non-settling Defendant LSSG through this litigation.

The JEM Settlement Trust is non-reversionary.   Any funds for any checks that remain uncashed after 180 days will be donated as *cy pres* monies to the Northwest Justice Project for the purpose of assisting and educating Washington residents with respect to practices of the debt settlement industry and issues relating to the DAA.  *Id*. § II.D.8.  If, however, more than

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 6
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

seven and one-half percent (7.5%) of the potential Settlement Class members timely file written requests for exclusion from the Settlement Class, then either Plaintiff or the JEM Defendants may terminate the Settlement Agreement.  *Id*. § II.F.5.

In addition, pursuant to the Settlement Agreement, the JEM Defendants have agreed to comply with Washington law, including the provisions of the DAA, as of the Effective Date of the Settlement Agreement.  *Id*. § II.H.

In exchange for the benefits allowed under the settlement, Settlement Class members who do not opt out will release every claim, right, cause of action, loss or liability whatsoever that has been or could have been asserted in this action against the JEM Defendants and related entities and individuals regarding the JEM Defendants' allegedly unlawful debt adjusting activities.  Settlement Agreement § III.A.  The release of the JEM Defendants shall not release the claims of Plaintiff and Settlement Class members against remaining Defendant LSSG.

3.    The Notice Program

If the Court grants preliminary approval, Plaintiff will ask the Court to approve a notice program in which the claims administrator will issue notice forms directly to Settlement Class members that inform the members of the Settlement and their rights under it.  Settlement Agreement § II.E.1.  Plaintiff anticipates that Settlement Class members will receive such notice directly through first-class mail and also by electronic mail using the most recent contact information available.  *See id.*

Once the claims administrator completes the mailing of notices to the Settlement Class, members will have forty-five days from the date of initial mailing to submit a written request to be excluded from or opt out of the Settlement Class.  Settlement Agreement § II.F.  Settlement Class members will have forty-five days from the date of the initial mailing to object to the Settlements.  *Id.* § II.G.  Once this period has passed, assuming the Court has granted final approval, the claims administrator will calculate the settlement awards for the JEM Settlement Class members and issue checks to those individuals.  *Id.* ¶ II.D.3.  It is unnecessary for

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 7
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Settlement Class members to submit claims in order to receive compensation.  If any of the issued checks remain uncashed after a period of 180 days, those funds will be distributed to the Northwest Justice Project.  Settlement Agreement § II.D.8.  No funds will revert to the JEM Defendants.

### III.  ARGUMENT AND AUTHORITY

**A.**      **Settlement and Class Action Approval Process**

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg") § 11:41 (4th ed. 2002) (citing cases).  Here, the proposed Settlement Agreement is the best vehicle for Settlement Class members to receive the relief to which they are entitled in a prompt and efficient manner.

The Manual for Complex Litigation (Fourth) (2004) § 21.63 ("MCL 4th") describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;

> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests.  Newberg § 11:25.

With this motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement.  The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile.  *Id*.  The decision to approve or reject a proposed settlement is committed to the Court's sound discretion.  *See City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the Parties to the agreement," and will reverse only upon strong showing of abuse of discretion) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)).

The Court's grant of preliminary approval will allow all Settlement Class members to receive notice of the proposed Settlement Agreement's terms and the date and time of the "formal fairness hearing," or Final Approval Hearing, at which Settlement Class members may be heard regarding the Settlement Agreement, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement Agreement may be presented.  *See* MCL 4th §§ 13.14, 21.632.  Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion.  *Id*. at § 13.14.

**B.     The Criteria for Settlement Approval Are Satisfied**

While the threshold for preliminary approval requires only that the settlement fall within a "range of reasonableness" (see *supra*), a preliminary analysis of the final approval criteria shows that Plaintiff exceeds that showing.  At the final approval stage, a proposed

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 9
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at 1276 (quoting *Officers for Justice*, 688 F.2d at 625). For the reasons set forth below, the proposed Settlement is the product of serious and informed arms-length negotiations and fall well within a "range of reasonableness" sufficient to warrant their preliminary approval. *See Orvis v. Spokane County*, 281 F.R.D. 469, 476 (E.D. Wash. 2012).

>    1.    The Settlement Agreement Is the Product of Serious, Informed, and Arm's-Length Negotiations

The Court's role is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted). "A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." *Hughes v. Microsoft Corp.,* No. C98-1646C, C93-0178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001). *See also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 542–43 (W.D. Wash. 2009) (approving settlement "reached after good faith, arms-length negotiations"); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 567 (W.D. Wash. 2004) (approving settlement "entered into in good faith, following arms-length and non-collusive negotiations").

The Settlement Agreement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this case. Marshall Decl. ¶¶ 2–5. Plaintiff's counsel are particularly experienced in the litigation, certification, and settlement of debt adjusting cases similar to this case. *Id.* ¶ 9; Zuchetto Decl. ¶¶ 3–5. In negotiating the JEM Settlement Agreement, counsel had the benefit of years of experience litigating class actions and a familiarity with the facts of

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 10
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  this case. *Id.* Moreover, Plaintiff and the JEM Defendants engaged in substantial negotiations

2  through an experienced mediator. Marshall Decl. ¶ 2–5.

3        As discussed in Section II.B above, counsel spent a considerable amount of time

4  engaging in discovery, reviewing documents, interviewing witnesses, and analyzing legal

5  issues related to the lawsuit's claims. *See Hanlon*, 150 F.3d at 1027 (no basis to disturb the

6  settlement, in the absence of any evidence suggesting that the settlement was negotiated in

7  haste or in the absence of information). Plaintiff and her counsel support the Settlement as fair,

8  reasonable, adequate and in the best interests of the Settlement Class. Marshall Decl. ¶ 9;

9  Zuchetto Decl. ¶ 14.

10       2.   <u>The Settlement Provides Substantial Relief for Settlement Class Members and</u>
<u>Treats All Settlement Class Members Fairly</u>

11

12        The Settlement Agreement provides relief for all Settlement Class members from whom

13  JEM received fees in relation to LHDR's debt adjusting program. The Settlement Agreement

14  requires the JEM Defendants to pay $175,000 into the JEM Settlement Trust to fund the

15  settlement.

16        The funds distributed to the Settlement Class will be allocated in a manner that is fair

17  and reasonable. Each member's share will be based on the fees JEM received relating to the

18  member. JEM Settlement Agreement § II.C.2, D.3. Plaintiff estimates that each Settlement

19  Class member will receive nearly thirty percent of the total fees JEM received relating to that

20  Class member. This percentage is well in line with settlements approved by other courts. *See,*

21  *e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (approving settlement

22  amounting to 30 percent of the damages estimated by the class expert; court noted that even if

23  the plaintiffs were entitled to treble damages that settlement would be approximately 10 percent

24  of the estimated damages); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)

25  (approving a settlement estimated to be worth between 1/6 to 1/2 the plaintiffs' estimated loss);

26

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 11
CASE NO. 3:11−CV−05054−RJB

1   *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving

2   settlement amounting to nine percent of estimated total damages).

3          The manner in which settlement funds will be allocated is simple and efficient.

4   Settlement Class members who do not opt out will automatically receive a check for the share

5   of the JEM Settlement Trust to which they are entitled; they do not need to file a claim form.

6   Settlement Agreement § II.D.3.  The Settlement Trust is non-reversionary, any of the funds for

7   any checks that remain uncashed after 180 days will be donated as *cy pres* monies to the

8   Northwest Justice Project.  Settlement Agreement § II.D.8.

9          3.     The Settlement Agreement Is Fair and Reasonable in Light of the Alleged
               Claims and Defenses
10

11          Entering into settlement negotiations, Plaintiff and Plaintiff's counsel were confident in

12   the strength of their case, but also pragmatic in their awareness of the risks inherent to litigation

13   and the various defenses available to Defendants.  The reality that Settlement Class members

14   could end up recovering only a fraction of the Settlement Agreement benefits or losing the case

15   at or before trial was significant enough to convince Plaintiff and Plaintiff's counsel that the

16   Settlement Agreement reached with the JEM Defendants outweighs the gamble of continued

17   litigation against them.

18          Plaintiff faced the risk of dismissal at a very early stage in this litigation.  This case

19   turns on competing interpretations of, among other things, a provision of the DAA known as

20   the "lawyer exemption."  *See* RCW 18.28.010(2)(a).  Defendants maintain that the DAA does

21   not apply to them because the statute exempts lawyers.  Plaintiff maintains that RCW

22   18.28.010(2)(a) is found in the "Definitions" section of the DAA and serves as a qualifier to the

23   statutory definition of  "Debt Adjuster."  The provision does not set forth a categorical

24   exemption from the DAA act.  Rather, the provision's plain language and statutory context

25   make evident that this subsection operates as a limited exclusion from the term "Debt

26   Adjuster," as elsewhere employed in that Act.  Although Plaintiff is confident her interpretation

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 12
CASE NO. 3:11−cv−05054-RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

of the DAA is correct, her damages could be substantially reduced, or eliminated altogether, if the Court of Appeals were to hold otherwise.

Another risk Plaintiff faced going forward is that the Court of Appeals would reverse this Court's ruling that the arbitration provision in the LHDR agreement is not enforceable.  If this were to occur, JEM would argue that Settlement Class members' claims should be sent to individual arbitrations.

Finally, there is a substantial risk of losing inherent in any jury trial.  Even if Plaintiff did prevail, any recovery could be delayed for years by an appeal.  Further, Defendants' financial situation presented a significant risk that Plaintiff would be unable to collect all or a significant portion of any judgment entered against the Defendants.  Indeed, Defendants' ability to pay a judgment beyond the amount recovered in this settlement was highly uncertain. During the parties' discussions, Defendants indicated that JEM has ceased operations and is a defunct company lacking any assets to satisfy a judgment. The Settlement Agreement provides substantial relief to Settlement Class members without further delay and permits them to pursue additional compensation through their claims against the non-settling Defendants and any other entity that caused them to be enrolled in an LHDR debt settlement program.

4.    The Class Representative Enhancement Award Is Reasonable

Enhancement awards for class representatives, like the one for $750 requested here, are appropriate.  Unlike unnamed Settlement Class members, who will enjoy the benefits of the representatives' efforts without taking any personal action, Plaintiff exposed herself to Defendants' investigation, committed herself to all the rigors of litigation in the event the case did not settle, and subjected herself to all the obligations of named parties.  Small incentive awards, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *see also* MCL 4th § 21.62 n. 971 (incentive awards may be "merited for time spent

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 13
CASE NO. 3:11−CV−05054-RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   meeting with class members, monitoring cases, or responding to discovery").  Incentive awards

2   are generally approved so long as the awards are reasonable and do not undermine the

3   adequacy of the class representatives.  *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157,

4   1163 (9th Cir. 2013) (finding incentive award must not "corrupt the settlement by undermining

5   the adequacy of the class representatives and class counsel").

6       Earlier this year, the Ninth Circuit issued a decision reversing the approval of a class

7   action settlement on the grounds that the proposed incentive awards destroyed the adequacy of

8   the class representatives.  *Radcliffe*, 715 F.3d 1157.  In that case, the incentive awards were

9   explicitly conditioned on the class representatives' support for the settlement.  *Id*. at 1161.  The

10  Court found that such "conditional incentive awards caused the interests of the class

11  representatives to diverge from the interests of the class" and that the class representatives

12  therefore did not adequately represent the absent class members.  *Id*.  The Court further found

13  that "the significant disparity between the incentive awards and the payments to the rest of the

14  class members further exacerbated the conflict," where representatives "in support of the

15  [s]ettlement" would receive $5,000 and the rest of the class would receive monetary relief

16  ranging from $26 to $750, with the majority of class members receiving about $26.  *Id*. at 1165.

17      Here, Plaintiff requests a service award of $750 or an amount the Court deems

18  appropriate.  *See* Settlement Agreement § II.D.7 (providing counsel "shall apply to the Court

19  for a $750 incentive award" and that any such incentive award shall be disbursed in "the

20  amount approved and awarded by the Court").  Plaintiff's support of the settlement is

21  independent of any service award and not conditioned on the Court awarding any particular

22  amount or any award at all, in stark contrast to *Radcliffe*.  Thus, Plaintiff's adequacy as Class

23  Representative is unaffected by an appropriate service award that recognizes her efforts and

24  significant contributions to the case.  *See id*.  Moreover, the Class here is entitled to substantial

25  monetary relief as set forth above.  *See* Section II.C, *supra*.  Indeed, Plaintiff's counsel estimate

26  that each Class Member who is entitled to relief will receive approximately 30 percent of their

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 14
CASE NO. 3:11−CV−05054−RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    estimated damages, with the average Class Member award exceeding $500.  *See* Marshall Decl.

2    ¶ 8.  A service award of $750 to Plaintiff is reasonable under the circumstances and well in line

3    with awards approved by federal courts in Washington and elsewhere.  *See Pelletz v.*

4    *Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329-30 & n.9 (approving $7,500 service awards and

5    collecting decisions approving awards ranging from $5,000 to $40,000).  Such awards have

6    been approved by Washington courts in other similar cases.  *See, e.g., Brown v. Consumer Law*

7    *Associates, LLC*, No. 11-CV-0194-TOR (E.D. Wash.), ECF No. 227 at 15 (approving $5,000

8    service awards in a similar case); *Bronzich v. Persels*, No. CV-10-064-TOR (E.D. Wash.), ECF

9    No. 311 at 13 (same); *Carlsen v. Global Client Solutions*, No. CV-09-246-LRS (E.D. Wash.),

10   ECF No. 218 at 4 (same); *Parkinson v. FFM*, No. CV-10-0345-TOR (E.D. Wash.), ECF No.

11   172 at 12 (same).

12        5.   The Northwest Justice Project is an Appropriate *Cy Pres* Beneficiary

13        There is a clear "driving nexus" between the *cy pres* fund in favor of the Northwest

14   Justice Project and absent Class Members.  *See Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir.

15   2012) (finding there must be "a driving nexus between the plaintiff class and the *cy pres*

16   beneficiaries" and that a "*cy pres* award must be 'guided by (1) the objectives of the underlying

17   statute(s) and (2) the interests of the silent class members") (citing *Nachshin v. AOL, LLC*, 663

18   F.3d 1034, 1038-39 (9th Cir. 2011)).  Under the Settlement Agreement, any *cy pres* funds are

19   to be used by the Northwest Justice Project "for the purpose of assisting and educating

20   Washington residents with respect to practices of the debt settlement industry and issues

21   relating to the [DAA]."  JEM Settlement Agreement § II.D.8.  In other words, the funds are to

22   be used to serve both (1) the DAA's overarching purpose of "stem[ming] the numerous unfair

23   and deceptive practices rife in the growing debt industry," *Carlsen v. Global Client Solutions,*

24   *Inc.*, 171 Wn.2d 486, 256 P.3d 321 (2011); and (2) the CPA's overarching purpose of

25   protecting Washington consumers from unfair or deceptive business practices.  *See* RCW

26   19.86.020, 19.86.920.  Thus, the *cy pres* fund will also benefit the interests of the silent Class

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 15
CASE NO. 3:11−CV−05054−RJB

1  Members affected by practices similar to those alleged to have been committed by the

2  Defendants in this case.

3        6.     <u>The Requested Attorneys' Fees and Costs Are Fair and Reasonable</u>

4       Plaintiff's counsel seek attorneys' fees awards of $52,500 from the JEM Settlement

5  Trust.  This award amounts to thirty percent of the total $175,000 JEM Settlement Trust.

6  Plaintiff's counsel also seek reimbursement for out-of-pocket expenses associated with this

7  case and costs to prepare, mail, and administer the proposed class notice.

8       Plaintiff's counsel's fees and costs request is reasonable under the circumstances of this

9  case.  Through August 15, 2013, Plaintiff's counsel have incurred more than $77,527 in

10  uncompensated fees litigating this case and $764.06 in out-of-pocket costs.  Marshall Decl.

11  ¶¶ 15–16; Zuchetto Decl. ¶ 16, 17.  Plaintiff's counsel expect to incur an additional $5,093.22

12  to prepare, mail, and administer the notice process.  Zuchetto Decl. ¶ 15.  In light of the

13  excellent value of the settlement and Plaintiff's counsel's knowledge and experience, the

14  attorneys' fees and costs to be sought are exceedingly reasonable.  Indeed, Plaintiff's counsel

15  have litigated the claims against the JEM Defendants efficiently and achieved settlement

16  quickly without subjecting their client and the Settlement Class to the uncertainties and risks of

17  class certification, further appeal, and trial.

18       In Plaintiff's motion for final approval, Plaintiff's Counsel will address in greater detail

19  the facts and law supporting their fee request in light of all of the relevant facts.

20  **C.**    **Provisional Certification of the Class Is Appropriate**

21       For settlement purposes, Plaintiff respectfully requests that the Court provisionally

22  certify the Settlement Class defined in Section II.C.1, *supra*.  Provisional certification of a class

23  for settlement purposes permits notice of the proposed settlement to issue to the class to inform

24  class members of the existence and terms of the proposed settlement, of their right to be heard

25  on its fairness, of their right to opt out, and of the date, time and place of the formal fairness

26  hearing.  *See* MCL 4th §§ 21.632, 21.633.  The JEM Defendants waive their challenges to class

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 16
CASE NO. 3:11−cv−05054-RJB

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   certification solely for purposes of this Settlement Agreement.  For the reasons set forth below,

2   provisional certification is appropriate under Rule 23(a) and (b)(3).

3          The numerosity requirement of Rule 23(a) is satisfied.  The JEM Defendants represent

4   that the Settlement Class consists of approximately 225 Washington consumers, and joinder of

5   all such persons is impracticable.  Settlement Agreement § II.A; *see also* Fed. R. Civ. P.

6   23(a)(1); *see also Rodriguez v. Carlson*, 166 F.R.D. 465, 471 (E.D. Wash. 1996).  The

7   commonality requirement is satisfied because there are many questions of law and fact

8   common to the Settlement Class that center on Defendants' practice of charging fees in excess

9   of fees permitted by the DAA.  *See* Fed. R. Civ. P. 23(a)(2).  The typicality requirement is

10  satisfied because Plaintiff's claims, which are based on fees charged pursuant to uniform

11  contracts executed by all members of the Settlement Class, are "reasonably coextensive with

12  those of the absent class members."  *See* Fed. R. Civ. P. 23(a)(3); *Hansen v. Ticket Track, Inc.*,

13  213 F.R.D. 412, 415 (W.D. Wash. 2003).  The adequacy of representation requirement is

14  satisfied because Plaintiff's interests are coextensive with, and not antagonistic to, the interests

15  of the Settlement Class.  *See* Fed. R. Civ. P. 23(a)(4); *see also Hansen*, 213 F.R.D. at 415–16.

16  Further, Plaintiff is represented by qualified and competent counsel who have extensive

17  experience and expertise in prosecuting complex class actions.  *See generally* Marshall Decl.

18  ¶¶ 9–14; Zuchetto Decl. ¶¶ 2–8.

19         The predominance requirement of Rule 23(b)(3) is satisfied because common questions

20  present a significant aspect of the case and can be resolved for all Settlement Class members in

21  a single adjudication.  *See* Fed. R. Civ. P. 23(b)(3); *see also Local Joint Exec. Bd. of*

22  *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

23         Because the claims are being certified for purposes of settlement, there are no issues

24  with manageability, and resolution of thousands of claims in one action is far superior to

25  individual lawsuits and promotes consistency and efficiency of adjudication.  *See* Fed. R. Civ.

26  P. 23(b)(3); *see also Connor v. Automated Accounts, Inc.*, 202 F.R.D. 265, 271-72 (E.D. Wash.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 17
CASE NO. 3:11−cv−05054-RJB

1   2001).  For these reasons, certification of the Settlement Class for purposes of settlement is

2   appropriate.

3   **D.     The Proposed Notice Program Is Constitutionally Sound**

4   "To protect their rights, the Court must provide class members with the best notice

5   practicable regarding the proposed settlement.  Fed. R. Civ. P. 23(c)(2).[3]  The best practicable

6   notice is that which is "reasonably calculated, under all the circumstances, to apprise interested

7   parties of the pendency of the action and afford them an opportunity to present their

8   objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

9   Settlement Class members can be reasonably identified through JEM's own records,

10  which contain information on all consumers who entered into a JEM debt settlement

11  agreement, including each person's last known mailing address, email address (where

12  available), and phone number.  Marshall Decl. ¶ 17.  Plaintiff proposes sending notice in the

13  form attached as Exhibit A to the Settlement Agreement directly via first-class mail and/or

14  email to all proposed Settlement Class members.  *See* Settlement Agreement § II.E.  This

15  approach will ensure that direct notice reaches as many Settlement Class members as possible.

16  The language of the proposed notice is plain and easily understood, providing neutral

17  and objective information about the nature of the Settlement.  The notice includes the definition

18  of the Settlement Class, a statement of each Settlement Class member's rights (including the

19  right to opt-out of the Settlement Class or object to the Settlement), a statement of the

20  consequences of remaining in the Settlement Class, an explanation of how Settlement Class

21  members can exclude themselves from the Class or object to the Settlement, and methods for

22  contacting Plaintiff's counsel and obtaining more information.  *See id.*

23  Plaintiff submits that the notice program outlined in the Settlement Agreement is the

24  best practicable notice under the circumstances of this case, and will be highly effective.

25  ─────────────────────

26  [3] *See also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best notice practicable" under the circumstances with description of the litigation and explanation of opt-out rights satisfies due process); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (holding "[w]e do not believe that *Shutts* changes the traditional standard for class notice from 'best practicable' to 'actually received' notice").

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

**E.       Scheduling a Final Approval Hearing Is Appropriate**

2        The last step in the settlement approval process is a Final Approval Hearing at which

3    the Court may hear all evidence and argument necessary to make its settlement evaluation.

4    Proponents of the Settlement Agreement may explain the terms and conditions of the

5    Settlement Agreement, and offer argument in support of final approval.  The Court will

6    determine after the Final Approval Hearing whether the Settlement Agreement should be

7    approved, and whether to enter a final order and judgment under Rule 23(e).  Plaintiff requests

8    that the Court set a date for a hearing on final approval at the Court's convenience, but no

9    earlier than December 4, 2013.

10                           **IV.  CONCLUSION**

11        For all of the foregoing reasons, Plaintiff respectfully requests that the Court: (1) grant

12    preliminary approval of the proposed Settlement Agreement; (2) provisionally certify the

13    proposed Settlement Class and appoint Rosita Smith Class Representative; (3) approve the

14    notice plan and form of settlement notice and order provision of such notice; (4) appoint The

15    Scott Law Group P.S., and Terrell Marshall  Daudt & Willie PLLC as Class Counsel; (5)

16    appoint The Scott Law Group P.S., to serve as the Claims Administrator; and (6) schedule a

17    formal fairness hearing on final settlement approval at the Court's convenience but no earlier

18    than December 4, 2013.

19

20

21

22

23

24

25

26

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    RESPECTFULLY SUBMITTED AND DATED this 16th day of August, 2013.

2                                      TERRELL MARSHALL DAUDT & WILLIE PLLC

3

4                           By: /s/ Toby J. Marshall, WSBA #32726
                                Beth E. Terrell, WSBA #26759
5                               Email:  bterrell@tmdwlaw.com
                                Toby J. Marshall, WSBA #32726
6                               Email:  tmarshall@tmdwlaw.com
                                Jennifer Rust Murray, WSBA #36983
7                               Email:  jmurray@tmdwlaw.com
                                Erika L. Nusser, WSBA #40854
8                               Email:  enusser@tmdwlaw.com
                                936 North 34th Street, Suite 300
9                               Seattle, Washington  98103-8869
                                Telephone:  (206) 816-6603
10

11                              Darrell W. Scott, WSBA #20241
                                Email: scottgroup@mac.com
12                              Matthew J. Zuchetto, WSBA #33404
                                Email:  matthewzuchetto@mac.com
13                              SCOTT LAW GROUP
                                926 W Sprague Avenue, Suite 583
14                              Spokane, Washington 99201
                                Telephone:  (509) 455-3966
15

16                              *Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 20
CASE NO. 3:11−CV−05054−RJB

1

<u>CERTIFICATE OF SERVICE</u>

2

       I, Toby J. Marshall, hereby certify that on August 16, 2013, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4

such filing to the following:

5

               Christopher G. Emch
6              Email:  emchc@foster.com
               FOSTER PEPPER, PLLC
7              1111 Third Avenue, Suite 3400
               Seattle, Washington  98101
8              Telephone: (206) 447-4400
               Facsimile:  (206) 749-1934
9

10             *Attorneys for Defendants Legal Services Support Group, LLC, JEM Group Inc.,
               and Joanne and Arthur Garneau*

11

       DATED this 16th day of August, 2013.

12

                                   TERRELL MARSHALL DAUDT & WILLIE PLLC

13

                                   By: /s/ Toby J. Marshall, WSBA #32726
14                                     Toby J. Marshall, WSBA #32726
                                       Email:  tmarshall@tmdwlaw.com
15                                     936 North 34th Street, Suite 300
                                       Seattle, Washington  98103-8869
16                                     Telephone:  (206) 816-6603

17

18                                 *Attorneys for Plaintiff*

19

20

21

22

23

24

25

26